520 A.2d 940

Civil Service Commission of the City of Philadelphia, Appellant *v.* James C. Putz, Appellee.

Argued September 9, 1986, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Kenneth L. Smukler*, Assistant City Solicitor, with him, *Ralph J. Teti*, for appellant.

*Frank De Simone*, for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., February 5, 1987:

James Putz was dismissed from the Philadelphia Police Department and the City Civil Service Commission (Commission) upheld his discharge. The Philadelphia County Common Pleas Court reversed the Commission's decision. The Commission appeals; we vacate the Common Pleas Court order and remand to the Commission.

The Police Department dismissed Putz for violating regulations, as follows:

*1.75—Conduct Unbecoming An Officer:*

On 8-8-81, at 3:53 A.M., you did violate Departmental Directive No. 10 when you fired your service revolver, grievously injuring Anthony Taylor, Age 22, N/M, 2037 W. Stella Street.

*4.20—Neglect of Duty:*

On 8-8-81 at 3:53 A.M., you did violate Procedural Directive No. 10, when you resorted to the use of deadly force without attempting/exhausting all reasonable means of apprehension on Anthony Taylor, Age 22, N/M, 2037 W. Stella Street.

On 8-8-81 at 3:53 A.M., you failed to notify Police Radio that you had discharged your weapon resulting in injury to a citizen, Anthony Taylor, Age 22, N/M, 2037 W. Stella Street.

Reproduced Record, p. 291a. Departmental Directive No. 10 provides that police officers shall exhaust all reasonable means of apprehension and control before using deadly force. The critical issue before the Commission, therefore, was whether Putz *reasonably* resorted to firing his weapon.

At the five hearings held to consider Putz's discharge, the Commission heard the testimony of Putz; the suspect Anthony Taylor; Putz's supervisor, Sergeant Kilrain; and two independent witnesses.[1]

Although conflicting accounts of the incident exist, the following facts are undisputed: While patrolling alone in a high crime area of the City, Putz observed a car which he believed might have been stolen. He drove his patrol car alongside in order to inspect the vehicle more closely. When Putz shined a searchlight into the car, the driver fled the scene at high speed. Putz pursued the driver in a car chase and then followed him on foot into a darkened alley. After firing a shot into the air and ordering the suspect to stop, Putz fired a second shot and wounded the suspect in the upper torso. Putz did not immediately report firing his service revolver and contradicted reports of gunshots in his communication to police radio.

---

[1] One independent witness testified that he observed Putz pursue the suspect Taylor into an alley and that Putz shouted at him to halt and then fired a shot into the air. He stated that he heard a second shot shortly thereafter.

Another witness gave a statement that from inside his residence he heard someone shouting directions to halt and heard gunshots shortly thereafter. This witness then called the police.

The Commission found that Putz's testimony about the incident did not adequately explain why he pursued and fired at Taylor.[2] The Commission also found the suspect Taylor's testimony incredible because he appeared before it with "deception and mendaciousness" and found his flight from Office Putz, which precipitated the incident, to be "unexplained."[3] Thus, the Commission appears to have relied on the independent witnesses and Sergeant Kilrain's testimony.

Where the common pleas court takes no additional evidence, review by this Court is to determine whether the Commission committed an error of law or abused its discretion. *Borough of Jenkintown v. Civil Service Commission of Jenkintown,* 84 Pa. Commonwealth Ct. 183, 478 A.2d 941 (1984).

Unless unsupported by substantial evidence, the Commission's findings of fact are conclusive on appeal. *Foley v. Civil Service Commission of Philadelphia,* 55 Pa. Commonwealth Ct. 594, 423 A.2d 1351 (1980). The legal conclusion of whether the facts support a finding of just cause, however, is a question of law for review by this Court. *Township of Fairview v. Saxe,* 73 Pa. Commonwealth Ct. 161, 457 A.2d 1014 (1983). Moreover, the burden is on the municipality to support the charges and to establish that there was just cause for dismissal. *See Foley.*

---

[2] Commission finding (6) states: "Appellant did not furnish a suitable explanation as to why he did not continue to pursue Taylor after firing a second shot at him."

Commission finding (10) states: "Appellant explained that when he fired the shot at Taylor, the man had turned around toward him; this does not contain a suitable explanation as to how and why the bullet struck Taylor in the back instead of in the front or side area of his body."

Reproduced Record, p. 294a.

[3] Reproduced Record, p. 294a.

The Commission contends that the common pleas court erred in reversing its decision since its findings of fact were supported by substantial evidence. Putz counters that, because the suspect Taylor's testimony about the incident was found not to be credible, there exists no evidence to support findings which would in turn support a conclusion that Putz engaged in conduct unbecoming an officer or neglected his duties.

### Conduct Unbecoming an Officer

Our review of the Commission's findings indicates that they are at least inconsistent if not contradictory. The Commission found that Putz was acting on the presumption that his suspect was carrying a gun when he fled the scene.[4] Yet it also found that Putz's testimony that he saw the suspect with a gun in hand in the car was not convincing.[5] Thus, it appears that the Commission found the testimony of both Putz and the suspect —as to why the chase began—not to be credible.

Furthermore, although the Commission found that Putz's bullet struck Taylor in the back and reference is made in the testimony to ballistics and medical examiner's reports,[6] the Commission made no mention of

---

[4] Commission finding (9) states: *"Appellant presumed Taylor had a gun* when he left the car but never testified that he saw the gun during the foot pursuit which led to the shooting."* Reproduced Record, p. 294a (emphasis added).

[5] Commission finding (5) states: *"Appellant's testimony was not convincing that he, in fact, saw Mr. Taylor with a pistol in his hand when the chase began, as he testified, although independent evidence established that a starter pistol was found in the car."* Reproduced Record, p. 294a. It was stipulated that this starter pistol resembled a .22 automatic pistol.

[6] The transcript of the January 30, 1985 hearing provides the following testimony:

[Commissioner] Boonin: What part of Mr. Taylor's body did the bullet enter? Do you know?

its reliance on such evidence nor does such evidence exist in the record. Apart from the discredited testimony of the two participants, we cannot determine what evidence the Commission relied upon in deciding the critical question of whether Putz *reasonably* resorted to firing his weapon. We are therefore constrained to remand this matter for a finding of whether Putz's conduct in discharging his weapon, *as established by credible evidence, if any*, is consistent with departmental directives on the reasonable use of deadly force. Mindful that the Department bears the burden of proof in this case, we direct that the Commission, which is bound by its credibility determinations, shall take no additional evidence and shall limit the proceedings to specific findings on the record evidence relied upon to support its findings.

## Neglect of Duty Violations

Putz was also cited for neglect of duty by failing to notify police radio that he had injured a citizen.[7]

---

[Appellee Putz's counsel]: I know; the bullet went in here—and out here—it went in the top here—and out the top here—; *it didn't go straight through. It went in on an angle.* . . .

Boonin: Our understanding was that Mr. Taylor was hit in the back by the bullet and yet he was facing you. I don't quite understand how that occurred. He turned toward you. . . .

Witness: He turned toward me, but, like, the upper torso turned toward me, not necessarily. . . .

Boonin: I see; now I understand; okay.

[Appellee Putz's counsel]: Dr. Bailey, with all due respect, sir, if you would like a medical examiner's report, I will be willing to supply it.

Reproduced Record, pp. 230a-231a. In addition, the transcript of police radio transmittal for August 8, 1981, included a transmission from a responding patrol car that Taylor was shot in the right rear chest. Reproduced Record, p. 284a.

[7] The Commission also found that the Department dismissed Putz because he had fired a warning shot (Commission finding (1),

The Commission found only that Putz did not "furnish a suitable explanation as to why he *did not continue to pursue Taylor* after firing the second shot at him." Reproduced Record, p. 249 (emphasis added). This finding alone will not support the conclusion that Putz knew he had injured the suspect but failed to report it. Putz testified that after he fired his gun once into the air and a second time at Taylor, whom he perceived had turned to attack him, the suspect continued to flee down the alley. This testimony is corroborated by Taylor and the independent witnesses. Putz also testified that he was unaware that he had wounded Taylor. We therefore direct that, on remand, the Commission make findings necessary to the resolution of whether Putz knew that in discharging his weapon he had injured a citizen.

We vacate the common pleas court order and remand this matter to the Philadelphia Civil Service Commission for proceedings consistent with this opinion.

## ORDER

The Philadelphia County Common Pleas Court, No. 4978 March Term 1985, dated December 11, 1985, is vacated and this case is remanded to the Philadelphia Civil Service Commission for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

Reproduced Record, p. 294a). Although this action does not conform with Department directives, the Commission should make findings on whether the firing was justified because of the exigent circumstances involved in this matter (*e.g.*, poor visibility at the scene, Putz's mental state). Such findings are critical to a valid determination of the disciplinary action undertaken here.