**CITY OF PHILADELPHIA,**
**Department of Human**
**Services**

v.

**CITY OF PHILADELPHIA CIVIL**
**SERVICE COMMISSION**
**(Steve Carter)**

**Appeal of:  City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued March 2, 2006.
Decided March 27, 2006.
Reargument Denied May 31, 2006.

Elise Bruhl, Philadelphia, for appellant, City of Philadelphia.

J. Edward McCain, III, Philadelphia, for appellee, Steve Carter.

BEFORE: SMITH–RIBNER, Judge, and LEADBETTER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The City of Philadelphia appeals an order of the Court of Common Pleas for the First Judicial District (trial court) reinstating Steve L. Carter to his position as a Youth Detention Counselor for the Department of Human Services. The trial court affirmed the Philadelphia Civil Service Commission's holding that Carter's misdemeanor convictions for driving under the influence and for carrying a loaded firearm without a license did not constitute just cause for his dismissal. In this case we consider whether the Commission erred in reaching this conclusion in light of the fact that Carter worked in the criminal justice system with delinquent children for whom he was expected to serve as a role model.

The facts in this case are not in dispute. On the evening of September 27, 2002, Carter was observed to run a red light, causing a Philadelphia police officer, Mary Leach, to activate her lights and siren.

Officer Leach pursued Carter for ten blocks before he pulled over, causing Officer Leach to call for backup. Carter stepped out of his vehicle and as he did so, Officer Leach noted that his "balance [was] wobbly," he smelled of alcohol and was not in control; she concluded Carter was "highly medicated or ... a DUI." Reproduced Record 49, 53 (R.R. ——). When Officer Leach recovered a loaded Colt .38 from his waistband, Carter informed her that he was licensed to carry the gun and that the license was in his trunk. When her search failed to locate the license, Officer Leach secured Carter in her vehicle. A check on the gun revealed that the weapon was registered to a family member, not Carter, who was then charged with (1) driving under the influence and (2) felony and misdemeanor firearms violations.

On June 10, 2003, Carter pled guilty to two misdemeanors, driving under the influence and carrying a firearm without a license, and was sentenced to three years probation.[1] As a result of these convictions, Carter was charged with conduct unbecoming of a City employee and with violating Juvenile Justice Services Policy 4.10I.24, which forbids employees from engaging in misconduct or criminal acts while off-duty.[2] A panel of the Department of Human Services (Department) made up of peers and management conducted a hearing on these charges. The panel recommended a ten-day suspension. The panel's recommendation was referred to the Department head, Commissioner Alba Martinez, the individual responsible for matters of employee discipline. She decided that given Carter's job responsibilities and the serious nature of his convictions, he should be dismissed.[3] On May 20, 2004, Carter was discharged.

Carter appealed his dismissal to the Civil Service Commission. At the hearing,

---

1. Carter had two prior convictions for firearms charges at the time of his September 27, 2002, arrest. On April 13, 1980, Carter was arrested on controlled substance and firearm charges; he pled guilty to carrying firearms without a license. As a result of a subsequent arrest on January 25, 1982, Carter was found guilty of carrying a firearm without a license, 18 Pa.C.S. § 6106, and carrying a firearm on the public streets of Philadelphia, 18 Pa.C.S. § 6108. Carter identified the 1980 conviction on his job application with the City, but not the 1982 conviction.

2. A copy of this policy appears not to have been made part of the record. However, the relevant language from Policy 4.10I.24 was quoted in Carter's "Notice of Dismissal." It states as follows:

   Employees that are off duty are not permitted to engage in misconduct, disgraceful, infamous, dishonest, immoral or criminal acts that may warrant criminal charges being lodged by said employees by an outside agency.

   R.R. 94.

3. The Notice of Dismissal read:

   The conduct at issue is extremely serious, violating not only agency and city standards for public employees in general and more importantly, for your particular position as Youth Detention Counselor. It is inconsistent with the mission and mandates of the Juvenile Justice Division of the Department of Human Services to have in its employ a person who has so recently been convicted of crimes of this nature. Permitting a convict, still serving his sentence, to serve in the capacity of counseling youth is inherently hypocritical and counter-productive to the objectives of the Division. Further, the crimes at issue—a weapons charge and driving under the influence of a controlled substance—both demonstrate judgment and decision-making skills that are substantially impaired. The crimes likewise demonstrate a flagrant disregard for [the] health and safety of the public at large. The role of Youth Detention Counselors is, in part, to serve as role models for youth in the criminal justice system and to ensure the safety and well-being of these youth frequently in difficult situations.

   R.R. 95.

two witnesses testified on behalf of the City, Anne Marie Ambrose, Deputy Commissioner for Juvenile Justice Services, and Officer Mary Leach. Ambrose testified about the Department's personnel policy for Youth Detention Counselors, and Leach testified about the events that led to Carter's misdemeanor convictions.

Youth Detention Counselors supervise and counsel delinquent children detained at Youth Study Centers.[4] Counselors are responsible for the safety of the children, who at times become disruptive and violent. Counselors are expected to serve as role models to help rehabilitate children who have committed crimes. Ambrose testified that a criminal conviction can impact the ability of a counselor to do the job effectively; nevertheless, a conviction for off-duty conduct does not automatically disqualify an applicant for the position. Rather, each applicant's situation is separately evaluated to determine whether the conviction is such that it may interfere with the counselor's ability to perform. Hiring is governed by Juvenile Justice System Policy 4.1(E)(2), and it states:

> A criminal record shall not bar employment automatically, but must be evaluated according to the seriousness of the offense and its relation to the probable effect upon job performance. An arrest or conviction occurring after the date of hire, particularly for an offense that relates to the employment, may be subject to disciplinary action or suspension.

Hearing Exhibit A–6. The City hired Carter in 1990 in spite of his 1980 firearms conviction.[5] However, the serious nature of Carter's two convictions in 2003 was, in Ambrose's words, "unacceptable for staff who work with these young, troubled, children." R.R. 15. Accordingly, Carter was dismissed.

Officer Leach gave the above-recited account of Carter's arrest on the evening of September 27, 2002. Carter then offered his version of the event. He testified that he pled guilty to the criminal charges because they were "true;" however, his behavior that night was the result of "[not] thinking clearly." R.R. 73. He explained that he had been prescribed Ambien, a sleeping pill, and that one hour after he had taken the drug on the evening of September 27, 2002, he was awakened by a telephone call from his wife, telling him that her car had broken down in a bad neighborhood known for drug trafficking. Fearing for his wife's safety, Carter left immediately. He got his wife's car started and was driving home in his own car when he was stopped; he stated that he pulled over as soon as he could do so safely. He testified that he did not remember putting a loaded gun in his belt, but he did remember Officer Leach removing it from him. He acknowledged that he should have directed his wife to call 911 or called 911 himself rather than attending to his wife, but his thinking was impaired as a result of his taking the Ambien.

---

4. Ambrose explained that:
   We're responsible for safety and security of the children who are held there, both males and females, who are court-committed by the First Judicial District. Usually the average length of stay for the kids is about seven to ten days. We provide them with educational assessments. We have different levels of supervision for the kids.
   R.R. 10.

5. Ambrose testified that Carter had probably been hired in 1990 due to the "remoteness" of the 1980 conviction and because:

   > [W]e believe in rehabilitation. We believe that kids who do something wrong can turn their lives around. And that may have been the case with Mr. Carter.

   R.R. 18.

Carter explained that he had been prescribed Ambien because of the stress caused by his litigation with the City. In 2002, the City discharged Carter for alleged excessive absenteeism. Carter appealed to the Commission, which denied his appeal. Carter then appealed to the court of common pleas, where the matter was still pending on the evening of September 27, 2002. On February 3, 2004, the court of common pleas ordered Carter to be reinstated. The City did so. It then immediately suspended Carter for the conduct at issue in this case and scheduled a hearing before the Department's panel on April 27, 2004; Carter never actually returned to work.

Carter introduced a letter of recommendation from his priest, praising Carter's volunteer work with church youth and attesting to Carter's good character. Carter also introduced the testimony of Brian Davis, a counselor who had formerly been Carter's partner for five or six years. He stated that Carter was the best partner he ever had and was a positive influence on the children at the Youth Study Center. Further, Davis stated that he did not believe that Carter's misdemeanor guilty pleas would affect his ability to do his job. Finally, Carter offered into evidence several commendations he had received from the Department for his fine work, one as recently as January 2002.

Although the Commission agreed that Carter's criminal convictions were serious and could adversely affect his ability to serve as a positive role model, it nonetheless held that the Department had failed to provide "adequate proof of delinquency, inefficiency or misconduct to justify dismissal." Commission Decision at 5. Although Carter had been under the influence of a prescription drug on the evening in question, the Commission noted that Carter did not resist arrest. Further, Carter acknowledged his error in judgment and accepted the consequences by pleading guilty to two of the criminal charges. Because the Commission found the City lacked just cause to dismiss Carter, it reinstated him with full backpay.[6]

The City appealed, and the trial court affirmed, noting in its opinion that, "it [was] obvious everyone, except the [City], felt Mr. Carter should be given a second-chance." Trial Court Opinion at 3. The City then appealed to this Court.

■ On appeal,[7] the City challenges the trial court's decision to affirm the Commission's reinstatement of Carter on three bases. First, the City contends that the Commission erred as a matter of law in holding that two misdemeanor convictions by an employee working in the juvenile criminal justice system did not give the City just cause for a dismissal. Second, the City contends that the Commission erred in considering mitigating evidence about the criminal conduct. Third, the City contends that the Commission's decision violates the strong public policy that favors the discharge of public employees who engage in criminal conduct.

■ We consider, first, whether the City had just cause to dismiss Carter.

6. The Commission did not accept Carter's theory that he was dismissed in retaliation for his successful challenge to his 2002 dismissal. It also rejected Carter's theory that his conduct on September 27, 2002, was irrelevant because on that date he was technically not employed by the City.

7. On appeal, our review of an adjudication of the Civil Service Commission is to determine whether the Commission violated the constitution, erred as a matter of law or made findings of fact not supported by substantial evidence. *Civil Service Commission v. Poles,* 132 Pa.Cmwlth. 593, 573 A.2d 1169, 1172 (1990).

The Philadelphia Home Rule Charter governs the discharge of employees protected by civil service, and it states as follows:

Any dismissal or demotion after the completion of the required probationary period of service, or suspension of any employee in the civil service shall be for just cause only.

351 Pa.Code § 7.7–303. The Charter explains that "just cause" protects an employee against dismissal for "political, religious or racial reason, or labor union activity lawful for municipal employees." 351 Pa.Code § 7.7–201. Beyond that, just cause grants wide latitude to the supervisor. *Civil Service Commission v. Poles,* 132 Pa.Cmwlth. 593, 573 A.2d 1169, 1172 (1990). As our Supreme Court has explained:

[J]ust cause for removal ... must necessarily be largely a matter of discretion on the part of the head of the department. To be sufficient, however, the cause should be personal to the employee and such as to render him unfit for the position he occupies, thus making his dismissal justifiable and for the good of the service.

* * *

■ All that the law requires is that *the cause* be not religious or political, but *concerned solely with the inefficiency, delinquency or misconduct of the employe.* A wide latitude must be left to the superior officer—in fact a discretion conditioned only on its exercise in good faith and not as a screen for some reason not based upon the fitness of the employee to fill the position.

*In re O'Gorman,* 409 Pa. 571, 576–577, 187 A.2d 581, 583–584 (1963) (emphasis added) (citations omitted).[8]

The City contends that Carter's criminal misconduct provided ample just cause for the City to dismiss him. It was error, it argues, for the Commission to minimize the seriousness of those convictions by terming them "mistakes in judgment" that resulted from Carter's being under the influence of a sleeping pill. The City notes that intoxication is not a defense to a crime [9] and should not be allowed as a defense in an employee discipline case. Carter held a sensitive position; further, his behavior demonstrated a lack of judgment and disregard for the safety of others. *See, e.g., York Township Board of Commissioners v. Batty,* 694 A.2d 395 (Pa. Cmwlth.1997) (off-duty DUI by police officer was just cause for dismissal). Finally, Carter violated a written policy subjecting Youth Detention Counselors to discipline for off-duty misconduct, including criminal acts.

■ In deciding whether a public employer has established just cause for dismissing a civil service employee, this Court has identified a number of factors relevant to this determination. First, the nature of the job is an important consideration; an employee in a "sensitive position" may be subject to dismissal if only to avoid the appearance of impropriety whereas an employee in a non-sensitive position may not.

---

**8.** Even a single instance of misconduct or an error of judgment can constitute just cause for dismissal if it adversely reflects on the fitness of a person for his duties. *See Williams v. State Civil Service Commission,* 457 Pa. 470, 327 A.2d 70 (1974) (just cause to dismiss as a result of one incident of negligence that resulted in escape of four boys from juvenile detention center).

**9.** 18 Pa.C.S. § 308 states, in relevant part, as follows:

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense....

*Stone v. State Correctional Institution at Graterford*, 55 Pa.Cmwlth. 188, 422 A.2d 1227, 1228 (1980) (holding that a corrections officer was in a "highly sensitive" position). A second relevant factor is whether the conduct in question demonstrates a lack of judgment that erodes confidence in an employee's character. *Commonwealth, Office of Attorney General v. Colbert*, 142 Pa.Cmwlth. 657, 598 A.2d 344 (1991) (holding that dismissal for arrest on 40 unpaid parking tickets constituted just cause). A third factor concerns safety. An employee whose job it is to protect the safety of others is expected to behave in a manner consistent with this goal even while off duty. *Doerr v. Pennsylvania Liquor Control Board*, 88 Pa. Cmwlth. 610, 491 A.2d 299, 303 (1985) (loss of service revolver by Liquor Control Board officer in the course of off-duty altercation constituted just cause for dismissal). Further, in considering the conduct of law enforcement officers, extenuating circumstances will not excuse the off-duty dangerous conduct. *Feliciano v. Borough of Norristown*, 758 A.2d 295, 297 (Pa.Cmwlth.2000) (officer's concern that children were exposed to drugs at estranged wife's house did not excuse his driving wrong way up a one-way street with service weapon and nearly hitting a child).

We agree with the City that all of these factors tip the balance in favor of concluding, as a matter of law, that the City had just cause to dismiss Carter. Although not a law enforcement officer, Carter had responsibility for the safety of children detained at Youth Study Centers. Ambrose testified that to have a person on staff with more than one gun-related con-

viction "is not a safe person to have working at the Youth Study Center." R.R. 19.[10] Carrying a loaded weapon while under the influence of a powerful prescription drug showed very poor judgment, even in the view of the Commission. The job of Counselor, however, requires good judgment. *See Stone*, 422 A.2d at 1228 (prison guards' possession of marijuana was just cause for dismissal because it cast doubt on ability to perform in sensitive position). Finally, the City had reason to doubt the character of a person who violated the firearms laws and then lied to the arresting officer about his authorization to have the weapon. Indeed, on cross-examination Carter admitted that he had never even applied for a license. The City concluded that Carter's convictions and his lies to Officer Leach not only raised doubts about his character but also were "contrary to all of the role-modeling behavior that our staff are responsible for at the Youth Study Center." R.R. 16.

Carter argues, however, that the City failed to follow the terms of its own Juvenile Justice System Policy 4.1(E) in dismissing him. This policy provides that a criminal conviction will not automatically bar an applicant from being hired but will be evaluated according to "the probable effect upon job performance." Hearing Exhibit A–6. The policy goes on to explain that after being hired, an arrest or conviction that relates to employment may be subject to disciplinary action. This means, according to Carter, that the City was obligated to consider the mitigating circumstances surrounding Carter's arrest and conviction, and it failed to do so. The Commission did consider those mitigating

10. The City observes that were it not to dismiss Carter, its liability would be enormous should Carter be involved in a firearms incident at the Youth Study Center. City's Brief at 23 n. 4. This argument is somewhat specu-

lative; further, the City hired Carter notwithstanding his prior conviction for having a loaded firearm on the streets of Philadelphia without a license.

factors, and its judgment on this matter should not be overturned, according to Carter, lest this Court improperly substitute its judgment for that of the Commission.

The City responds that Policy 4.1(E) is irrelevant because its stated purpose is to establish hiring standards. Only as an aside does the policy state that a post-hire arrest or conviction may lead to disciplinary action. More dispositive, according to the City, is Policy 4.10I.24, which directly prohibits off-duty misconduct and criminal acts by employees in the Juvenile Justice System.

We agree with the City that it correctly applied Juvenile Justice System Policy 4.10I.24, which plainly prohibits Counselors from committing criminal acts while off duty. Its action was also consistent with Policy 4.1(E), which promises to discipline an employee who commits a conviction after hire. Carter argues, however, that any post-hire disciplinary action must be subject to the standards set forth in the first sentence in Policy 4.1(E), which refers to "prospective staff." Hearing Exhibit A–6. Stated otherwise, Carter believes that post-hire crimes do not lead to automatic discipline and will not disqualify continued employment unless the conviction impairs the employee's ability to do the job. Carter's interpretation of Policy 4.1(E) is colorable, but it does not change the outcome. The City did not automatically discharge Carter; he had a hearing before a Department panel. Further, the City had a reasonable basis for concluding that the convictions affected his ability to serve as a Counselor.

The dispositive question here is not the Juvenile Justice System Policy but whether the Commission correctly applied the just cause standard in the Home Rule Charter. We do not believe it did. The Commission does not have a mandate to reverse the discretion of the "head of the department" unless that person acts in bad faith "as a screen" for a patently discriminating reason. *In re O'Gorman,* 409 Pa. at 576–577, 187 A.2d at 583–584. In applying the standards in the Home Rule Charter, it was the duty of the Commission to defer to the discretion of Commissioner Martinez, who made the decision that she believed was required "for the good of the service." We may agree with the trial court that Carter deserves "a second chance" and that a suspension is a more appropriate sanction, but the law is clear that once just cause is found, neither the Commission nor this Court can impose a more lenient or a more severe penalty. *City of Philadelphia v. Civil Service Commission of the City of Philadelphia (Luna),* 717 A.2d 1067, 1070 (Pa.Cmwlth. 1998) *abrogated on other grounds by Naylor v. Township of Hellam,* 565 Pa. 397, 773 A.2d 770 (2001).

The Commission abused its discretion in holding that Carter's two serious misdemeanor convictions did not constitute just cause for dismissal. It failed to defer to the discretion of the agency head on what was required "for the good of the service." Even the panel found just cause for discipline. In this case, the Commission found, as fact, that Carter had violated the Department policy with respect to off-duty misconduct, and this violation gave the City just cause to dismiss Carter. It was not the province of the Commission to deprive Commissioner Martinez of the ability to decide what was best for the Department.

Next, we consider the City's argument that the Commission erred in finding that Carter's actions were excused by his use of a prescription drug. Carter argues, in response, that it was the obligation of the City to consider all the circumstances of Carter's criminal acts, including the mit-

igating circumstances he offered in his testimony, before dismissing him.

▮ Generally, one who pleads guilty to a crime is bound by that conviction. In other words, he cannot collaterally attack or deny his criminal acts in other legal proceedings. *See, e.g., Department of Transportation v. Mitchell,* 517 Pa. 203, 535 A.2d 581, 584 (1987) (guilty plea established liability in civil case arising from same facts). This rule applies to administrative proceedings as well. *See Burger King v. Workmen's Compensation Appeal Board (Boyd),* 134 Pa.Cmwlth. 547, 579 A.2d 1013, 1015 (1990) (rule of conclusive effect of prior misdemeanor or felony convictions extends to proceedings before an administrative agency).

Our holding in *Department of the Navy, Naval Air Warfare Center, Aircraft Division Warminster v. Unemployment Compensation Board of Review,* 158 Pa. Cmwlth. 605, 632 A.2d 622 (1993) is instructive. In that case an employee pled guilty to filing false claims for $30,000 in governmental travel expenses. He argued that his "obsessive compulsive disorder" and "stress" caused his actions. The Unemployment Compensation Board of Review agreed that his personality disorder affected his behavior and granted him unemployment compensation. This Court reversed, holding that his guilty plea was conclusive and that the Board had abused its discretion.

Similarly, in *Hawkins v. Unemployment Compensation Board of Review,* 695 A.2d 963 (Pa.Cmwlth.1997), this Court held that a guilty plea could not be attacked in an ancillary proceeding. Hawkins, a correctional guard, argued that in spite of his guilty plea to welfare fraud, he should be allowed to "explain the actual circumstances of his plea agreement."[11] *Id.* at 965. This Court disagreed, holding that Hawkins "cannot now challenge the conviction by attempting to explain the circumstances surrounding his plea in an attempt to prove his innocence" and his guilty plea "conclusively established his conduct." *Id.* at 966.

Carter offered the same gambit to the Commission that was rejected in *Department of the Navy* and *Hawkins.* We do not say that the Commission erred in admitting Carter's testimony about the September 27, 2002, event. We disagree, however, that the Commission could rely on mitigating evidence in deciding the just cause question. Mitigating evidence may be relevant to the question of whether a sanction was appropriate but not to the just cause determination. The Commission may disagree with the City's decision to dismiss Carter, but it has not been given the authority to modify discipline that results from a finding of just cause. *Luna,* 717 A.2d at 1070.

For these reasons, we reverse the trial court's holding that the City lacked just cause to dismiss Carter.[12]

11. Hawkins' account was that his wife was supposed to determine how to report income from her stock holdings and complete a form after he had signed it, but that his wife "apparently neglected to follow through." *Hawkins,* 695 A.2d at 965. He eventually pled guilty to a misdemeanor but "felt he had no choice but to enter the plea." *Id.*

12. The City asserts that the Commission erred because its decision was contrary to the public policy that this Court has repeatedly upheld: a government employer must be able to hold an employee accountable for his criminal acts, even off-duty crimes. It argues that municipal governments must be able to dismiss employees who have been convicted in order to maintain the public's trust. Because we reverse the Commission, we need not consider this argument. However, it really is just another way of stating why the City had just cause to dismiss Carter.

### *ORDER*

AND NOW, this 27th day of March, 2006, the order of the Court of Common Pleas for the First Judicial District dated August 29, 2005, in the above-captioned matter, is hereby REVERSED.