**CITY OF PHILADELPHIA**

v.

**CIVIL SERVICE COMMISSION (Renee JOHNSON)**

**Appeal of: Renee Johnson.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 5, 2008.

Decided Jan. 16, 2009.

Publication Ordered March 25, 2009.

Claiborne S. Newlin, Philadelphia, for appellant.

Elise Bruhl, Philadelphia, for appellee, City of Philadelphia.

BEFORE: LEADBETTER, President Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Renee Johnson (Johnson) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court), reversing the decision and order of the Civil Service Commission of the City of Philadelphia (the Commission), which had restored Johnson to her position as a Correctional Sergeant with the Philadelphia Prison System with full back pay and emoluments.[1] We now affirm.

The underlying facts and procedural history of this case can be summarized as follows. On September 29, 2004, police officers for the City of Philadelphia (the City) responded to a request from a fellow officer to assist him with a situation involving a growing crowd of people. Upon arriving at the scene, Johnson's daughter was repeatedly directed to disperse. She refused and was threatened with arrest. She continued to refuse and one of the officers attempted to place her under arrest. During this attempt to arrest Johnson's daughter, Johnson herself became involved in the situation. Johnson engaged in a physical confrontation with at least one officer and the police eventually arrested her as well.

Johnson faced numerous criminal charges, including criminal conspiracy, simple assault, aggravated assault, disorderly conduct and resisting arrest. While the charges were pending, the City first suspended Johnson, placing her on administrative leave. However, the City later permitted Johnson to return to work before her criminal trial began. In May of 2006, a jury convicted Johnson of the charge of resisting arrest. Johnson was sentenced to a one-year period of probation plus court costs.

---

1. Johnson had been dismissed from her position, effective December 12, 2006, as a result of her conviction for the offense of resisting arrest following an incident involving the arrest of Johnson's daughter, which will be described below.

Following this conviction, the Philadelphia Prison System's Office of Professional Compliance charged Johnson with violating General Order No. 6 as well as Policy 1.C.11.1 of the Philadelphia Prisons Policies and Procedures (employee code of conduct). On September 14, 2006, a hearing was held with respect to these alleged violations before the Prison Board. After finding that Johnson had violated General Order No. 6 and Policy 1.C.11.1, the Prison Board recommended that she be suspended for a period of twenty days.[2] General Order 6 provides as follows:

> Employees are responsible for maintaining professional deportment at all times. Employees shall maintain a quiet but firm demeanor in their contacts with inmates, not permitting any undue familiarity on the part of the inmates and refraining from it themselves. *Employees will refrain from engaging in unprofessional or illegal behavior both on and off-duty that could in any manner reflect negatively on the [Philadelphia Prison System].*

(R.R. at 55a) (Emphasis added).

The Prison Board's recommendation was thereafter forwarded to Leon King, Commissioner of Prisons. Despite the Prison Board's recommendation, Commissioner King decided to dismiss Johnson from her position. On December 1, 2006, the City issued Johnson a notice of intention to dismiss and on December 11, 2006, the City issued Johnson a notice of dismissal, effective December 12, 2006. A detailed summary of the reasons for dismissal also stated that a review of Johnson's arrest, sentencing and personnel record revealed that she had "little or no regard for [her] position with the Philadelphia Prison System." (R.R. at 50a).

Johnson appealed her dismissal to the Commission. The Commission conducted a hearing on May 1, 2007. At this hearing, the City presented the testimony of two of the primary police officers involved in the situation that led to Johnson's arrest on September 20, 2004, Officers Ian Lichterman, who was allegedly struck by Johnson, and Officer Christopher Rubino, who was one of the first responders to the call for assistance at the scene. These officers testified as to their respective recollections regarding the incident in question. The officers testified that they responded to another officer's request for assistance and that when the officers arrived on scene, they observed a large crowd of people, approximately 200 people according to Officer Lichterman. The officers attempted to direct these people, including Johnson's daughter, to disperse. Johnson's daughter, however, refused to obey the officers' commands and she was placed under arrest.

Specifically, Officer Lichterman testified that during the attempted arrest of Johnson's daughter, Johnson approached the officers and stated that "you're not going to lock up my daughter." (R.R. at 9a). Officer Lichterman testified that Johnson proceeded to strike him several times in his head and face. Officer Lichterman tried to push Johnson in a manner to distance himself from her, at which time Johnson grabbed him by the shirt collar, causing the shirt to be ripped, and causing both parties to fall to the ground. After a threat of pepper spray from other officers and a direct order from a police captain at the scene, Johnson released the officer and she was subsequently placed under arrest. Nevertheless, Officer Lichterman testified that Johnson remained hostile and continued to resist by struggling with the offi-

---

**2.** The Prison Board noted that any sanction ranging from a fifteen-day suspension to a dismissal would have been appropriate for these violations.

cers and refusing to enter the police wagon for transport.

Officer Rubino testified that he was the officer who arrested Johnson's daughter. Officer Rubino testified that Officer Lichterman initially attempted to assist him with this arrest, as she would not comply, but at some point disengaged to deal with Johnson. Officer Rubino testified that the only thing he saw thereafter was Johnson in handcuffs in the back of the police wagon and Officer Lichterman's ripped shirt.

Johnson testified on her own behalf before the Commission. While acknowledging that she had been convicted of resisting arrest, Johnson testified that she had not actually resisted the arrest. Johnson proceeded to testify regarding the events that led to her involvement with the police officers' attempt to arrest her daughter. Johnson stated that she saw a police officer twisting her daughter's arms and banging her head and hand on a car. She testified that she approached the officers to ask why they were arresting her daughter, but that the officers did not respond. Instead, Johnson indicated that one of the officers turned and began hitting her. Johnson testified that this was the reason why she grabbed the officer by the shirt collar, after which they fell to the ground.

The Commission issued a decision on July 5, 2007, reversing the City's dismissal of Johnson and directing the City to reinstate her with full back pay and emoluments. In reaching its decision, the Commission considered several factors it deemed significant, including that (1) the officer hit by Johnson did not require med-

ical care, (2) Johnson was not found guilty of assault, (3) the incident did not occur while Johnson was on duty, (4) the events giving rise to the incident involved Johnson's daughter, (5) the Commission accepted as credible Johnson's version of the events, i.e., that she was not an aggressor, and (6) the nature of the events culminating in her arrest do not negatively impact Johnson's ability to perform her job as a prison employee. Thus, although the Commission apparently determined that Johnson did strike one of the officers while he was attempting to restrain/arrest her, and recognized the fact of her criminal conviction, it also generally accepted as credible Johnson's version of the events. The City thereafter filed an appeal with the trial court.

On February 21, 2008, the trial court reversed the Commission's order, concluding that the Commission had erred as a matter of law and issued factual findings not supported by substantial evidence. The trial court opined that a conviction for resisting arrest constituted a sound and sufficient basis to dismiss Johnson, noting that the crime "demonstrated total disregard for law enforcement authority" and that the lack of judgment Johnson demonstrated in engaging in activity that lead to her conviction compromised her employer's ability to maintain confidence in her work as a corrections employee. (Opinion of Trial Court at 3).

■ Johnson filed her appeal from the trial court's decision,[3] and raises the following issues for our consideration: (1) whether the City offered substantial evidence to support a finding or legal conclu-

---

**3.** Our scope of review of an adjudication of the Commission is limited to determining whether the Commission violated the constitution, erred as a matter of law or made findings of fact not supported by substantial evidence. *Civil Service Commission v. Poles,* 132 Pa.Cmwlth. 593, 573 A.2d 1169 (1990), *petition for allowance of appeal granted,* 527 Pa. 657, 593 A.2d 427 (1991), and *appeal dismissed as improvidently granted,* 530 Pa. 31, 606 A.2d 1169 (1992).

sion that Johnson's criminal conviction for resisting arrest renders her unfit to hold her position as a prison guard; and (2) whether the trial court improperly substituted its judgment for the Commission's in concluding that the misdemeanor conviction did negatively impact her ability to perform her job as a prison guard.

 Johnson first argues that the Commission correctly concluded that the City failed to meet its burden to establish that it had just cause to terminate her. Johnson correctly states that the Philadelphia Home Rule Charter dictates that "[a]ny dismissal or demotion after the completion of the required probationary period of service, or suspension of any employe in the civil service shall be for just cause only." 351 Pa.Code § 7.7–303. The issue of whether just cause exists is a question of law fully reviewable by this Court. *Philadelphia Civil Service Commission v. Putz,* 103 Pa.Cmwlth. 529, 520 A.2d 940 (1987).

Citing *In re O'Gorman,* 409 Pa. 571, 576, 187 A.2d 581, 583 (1963), Johnson argues that, in order to dismiss a civil service employee, an employer must establish that the "cause" for dismissal must be of such a nature as to render the employee unfit for the position she held. Relying upon our Supreme Court's decision in *Woods v. State Civil Service Commission,* 590 Pa. 337, 912 A.2d 803 (2006), Johnson further argues that the just cause upon which an employer relies in disciplining an employee must be rationally related to and affect the employee's ability to perform the position. It is this relational aspect between her position and conviction for resisting arrest that Johnson claims the City failed to demonstrate.

In particular, Johnson suggests that the City should have offered evidence such as the nature of prisons, the role of corrections officers and the effect of a conviction for resisting arrest upon a corrections officer's ability to perform her job. Finally, Johnson argues that the City failed to establish a violation of General Order 6, because it offered no evidence that her conviction reflected negatively on the Philadelphia Prison System.

In response to these arguments, the City asserts that the record does include evidence regarding Johnson's job responsibilities and the policies and guidelines that she has to comply with in the performance of her job. For example, the City cites to the job description for a correctional officer, which includes examples of the work corrections officers are expected to perform and a list of required skills and abilities. Specifically, correctional officers are required to patrol "an assigned area of a correctional institution; supervises inmates in cells, cell block and dormitories; observes inmates to detect or prevent disturbances ... assists in maintaining order in yards and recreation areas ... [p]rovides security for a Police detention unit." (R.R. at 66a). The City also points to Policy 1.C.11.2 of the Philadelphia Prisons Policies and Procedures, which updated and formalized the General Orders. Although this policy relates significantly to the conduct of a correctional officer rather than to job duties, language in the document reinforces the notion that correctional officers may be involved in inmate disruptions.[4]

Both parties refer the Court to our previous decision in *City of Philadelphia v. Philadelphia Civil Service Commission (Carter),* 895 A.2d 87 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 589

---

4. Indeed, General Order No. 32 requires that officers be prepared to work out-of-schedule

hours in the case of escape or inmate disorder.

Pa. 732, 909 A.2d 306 (2006), and the discussion in that decision regarding just cause provides a good place to begin our analysis of the primary issue in this case. In *Carter*, the Commission concluded that the City had erred in dismissing an employee of a city youth detention center for his convictions for driving under the influence of a controlled substance and carrying a loaded firearm, based upon its conclusion that those convictions did not constitute just cause. The trial court affirmed the decision, but we reversed on appeal. We proceeded in *Carter* to summarize the factors to consider when just cause is an issue, stating as follows:

> In deciding whether a public employer has established just cause for dismissing a civil service employee, this Court has identified a number of factors relevant to this determination. First, the nature of the job is an important consideration; an employee in a 'sensitive position' may be subject to dismissal if only to avoid the appearance of impropriety whereas an employee in a non-sensitive position may not. *Stone v. State Correctional Institution at Graterford*, 55 Pa. Comwlth. 188, 422 A.2d 1227, 1228 (1980) (holding that a corrections officer was in a 'highly sensitive' position). A second relevant factor is whether the conduct in question demonstrates a lack of judgment that erodes confidence in an employee's character. *Commonwealth, Office of Attorney General v. Colbert*, 142 Pa. Comwlth. 657, 598 A.2d 344 (1991) (holding that dismissal for arrest on 40 unpaid parking tickets constituted just cause). A third factor concerns safety. An employee whose job it is to protect the safety of others is expected to behave in a manner consistent with this goal even while off duty. *Doerr v. Pennsylvania Liquor Control Board*, 88 Pa. Comwlth. 610, 491 A.2d 299, 303 (1985) (loss of service revolver by Liquor Control Board officer in the course of off-duty altercation constituted just cause for dismissal). Further, in considering the conduct of law enforcement officers, extenuating circumstances will not excuse the off-duty dangerous conduct. *Feliciano v. Borough of Norristown*, 758 A.2d 295, 297 (Pa.Cmwlth. 2000) (officer's concern that children were exposed to drugs at estranged wife's house did not excuse his driving wrong way up a one-way street with service weapon and nearly hitting a child).

*Carter*, 895 A.2d at 92–3.

The first factor indicated in *Carter* concerns the nature of an employee's job. In this case, contrary to Johnson's position that the record contains no information regarding the nature of her job, the above-noted documents provide sufficient detail from which to arrive at certain conclusions regarding the nature of her job. Johnson has not cited any cases that suggest that the position of a corrections officer is not a "sensitive position." Indeed, this Court has already determined to the contrary. *See Carter; Stone*. In *Stone*, this Court opined as follows:

> The appearance of wrongdoing by an employee in a sensitive position reflects unsatisfactorily on the employee's ability to perform his duties and supports his dismissal for just cause. In *Department of Justice, Bureau of Corrections v. Grant*, 22 Pa.Cmwlth. Ct. 582, 350 A.2d 878 (1976) a corrections officer was released from service upon being found in an automobile which was used in a robbery and which contained a stolen handgun. 'The appellant in the case at bar was employed to guard prisoners in a state correctional facility; this is a highly sensitive position which requires those who would hold it to avoid even the appearance of impropriety.' (Em-

phasis added.) *Id.* at 586, 350 A.2d at 880.

. . .

In *Lusane v. Civil Service Commission,* 5 Pa.Cmwlth. 642, 291 A.2d 808 (1972) a worker at an institution for mentally retarded patients was charged with assault and battery during his off-duty hours, thus placing into question the suitability of his temperament for the institutional post.

Under these circumstances, the superiors should not be required to take the chance that appellant would not so act in the future, especially in view of the fact that his job involved direct patient care of mentally retarded.

. . .

In the instant case appellant's possession of marijuana violated the parameters of the sensitive position which he held and cast doubt on his 'competency and ability' to execute his duties, sufficient to warrant his removal for just cause.

*Stone,* 422 A.2d at 1228.

The evidence of record describes the type of work that a corrections officer in the Philadelphia Prison System must perform. We have little difficulty in concluding that the nature of Johnson's position, like that in *Stone, Carter,* and *Lusane,* is one that is properly characterized as "highly sensitive." In this case, the nature of Johnson's sensitive position within the prison system subjected her to a more stringent review for conduct that results in the appearance of impropriety. As this Court stated in *Stone,* a corrections officer needs to avoid even the simple appearance of impropriety. Part of Johnson's job required her to help to maintain the respect of inmates for those who would supervise and control them. An employer of a correctional employee would reasonably be concerned over the appearance of impro-

priety of retaining an employee who could not themselves submit to the requests of an enforcement officer seeking to perform their jobs in trying to gain control of a chaotic situation.

■ The second factor mentioned in *Carter* is whether the employee's conduct demonstrates a lack of judgment or erodes confidence in the employee's character. With regard to this factor, we believe it timely to address the City's contention that Johnson is seeking to collaterally attack her criminal conviction for resisting arrest. We agree with the City's position. In a collateral administrative proceeding based upon underlying criminal conduct, the person who is the subject of the administrative proceeding may not seek to contradict the fact of a conviction by submitting evidence that seeks to question the validity of the conviction itself. *Carter.* Consequently, the Commission should have considered the legal question of whether the fact of Johnson's conviction for resisting arrest was sufficient to conclude that her conduct demonstrated a lack of judgment or eroded confidence in her character.

The misdemeanor crime of resisting arrest is defined in Section 5104 of the Crimes Code as follows:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104. Thus, the crime of resisting arrest requires some proof of a person's intent to prevent a public servant from legally arresting someone or performing any other duty, and by so acting the person either creates a risk to the

public servant or requires the public servant to use substantial force to overcome the resistance to the arrest. Under either scenario, we believe that the trial court could have properly concluded as a matter of law that Johnson's conviction demonstrated a lack of judgment and/or eroded the City's confidence in her character.

With regard to the third factor, the requirement that an employee whose job involves ensuring the safety of others behave in a consistent manner even while off-duty, we also have little difficulty in concluding that the facts support a conclusion that the City had just cause to discipline Johnson. As a corrections officer, the City expects and demands that Johnson "act quickly and calmly in an emergency." (R.R. at 67a). An employee who cannot maintain sufficient discipline over her reactions to a personal matter may not be able to maintain control in her occupational setting. The City should reasonably be able to expect an employee, especially a Correctional Sergeant, to avoid increasing the confusion associated with a chaotic situation involving hundreds of people.

Correctional officers are required to "detect or prevent" disturbances. (R.R. at 66a). Correctional officers are also required to have knowledge of "the safety and health precautions associated with correctional work." (R.R. at 67a). By simple implication, correctional officers have the duty to protect inmates, visitors and other staff members. Johnson's conviction for resisting arrest constitutes evidence suggesting that she did not act in a manner suited to the protection of the safety of others, namely police officers trying to perform their duties in a difficult situation.

Finally, as noted in *Carter*, extenuating circumstances do not excuse off-duty behavior. The fact that the potential arrest of Johnson's daughter played a role in the events giving rise to her arrest is not pertinent to the question of whether the City had just cause to impose discipline upon her.

In summary, we believe that the trial court correctly opined that Johnson's conviction for resisting arrest, combined with the evidence of record describing the nature of her responsibilities as a corrections officer, support the trial court's conclusion that the Commission erred in holding that the City did not have just cause to impose discipline upon Johnson.[5]

Hence, we believe that the Commission erred as a matter of law in concluding that the City lacked just cause to discipline Johnson. She engaged in unlawful conduct, i.e., resisting arrest. Furthermore, her conviction provided the City with just cause for imposing discipline. We do not believe that the trial court substituted its judgment for that of the Commission. Rather, the trial court properly concluded that the Commission had erred by not considering whether Johnson's conviction itself was sufficient to establish just cause for the imposition of discipline as a matter of law.[6]

As to any question regarding the extent of the discipline imposed, we ad-

---

**5.** Johnson also relies upon our Supreme Court's decision in *Woods* to argue that only a felony conviction is sufficient to support a just cause finding. However, that case arose under the Governor's Code of Conduct, which has no application to an employee of the Philadelphia Prison System.

**6.** Johnson relies upon *Woods* to argue that her conviction for resisting arrest could not constitute support for a finding of just cause. In *Woods*, our Supreme Court reversed the employer's discharge of Woods based upon the conclusion that it was not reasonable for employer to conclude that its reputation was impaired by the arrest. *Woods* involved an employer that discharged an employee based on his arrest, not a conviction, as is the situation before this Court. Hence, *Woods* is distinguishable.

dressed this issue in *Carter*, wherein we stated as follows:

> [I]t was the duty of the Commission to defer to the discretion of Commissioner Martinez, who made the decision that she believed was required 'for the good of the service.' We may agree with the trial court that Carter deserves 'a second chance' and that a suspension is a more appropriate sanction, but the law is clear that once just cause is found, neither the Commission nor this Court can impose a more lenient or a more severe penalty. *City of Philadelphia v. Civil Service Commission of the City of Philadelphia (Luna)*, 717 A.2d 1067, 1070 (Pa.Cmwlth.1998) abrogated on other grounds by *Naylor v. Township of Hellam*, 565 Pa. 397, 773 A.2d 770 (2001).

*Carter*, 895 A.2d at 94. In other words, once just cause is established, the Commission is not permitted to alter the discipline imposed unless the employer has abused its discretion in selecting a particular discipline. In this case, after concluding that just cause had been established, Commissioner King had the authority to impose a sanction up to discharge, which he elected to do. Based upon the foregoing discussion, we cannot say that the trial court erred in reversing the decision and order of the Commission or that such decision was not supported by substantial evidence.

Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 16th day of January, 2009, the order of the Court of Common Pleas of Philadelphia County is hereby affirmed.