**Donald PINKNEY**

v.

**CIVIL SERVICE COMMISSION,
Appellant.**

**PHILADELPHIA PRISON
SYSTEM, Appellant,**

v.

**Donald PINKNEY and Civil
Service Commission.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1996.
Decided Feb. 6, 1997.

Mark R. Zecca, Philadelphia, for appellant, Civil Service Commission, City of Philadelphia.

Samuel L. Spear, Philadelphia, for appellee, Donald Pinkney.

Before DOYLE and FRIEDMAN, JJ., and KELTON, Senior Judge.

DOYLE, Judge.

Before this Court are the consolidated appeals of the Civil Service Commission of Philadelphia and the Philadelphia Prison System from two separate orders of the Court of Common Pleas of Philadelphia County, both issued on May 11, 1995.

The facts are as follows. Pinkney was employed as a correctional officer by the Prison System, and worked at the Holmesburg Prison. In March of 1990, Pinkney was informed by an inmate that certain prisoners had possession of firearms. The informant explained to Pinkney that he had received a letter from another inmate stating that two prison gangs, the Junior Black Mafia and the Fruit of Islam, had three handguns and that they intended to use the weapons to kill or disable correctional officers starting with the rank of lieutenant and moving up the chain of command. Pinkney was also told that a Fruit of Islam "kamikaze squad," composed of persons from outside of the prison, armed with automatic weapons, would assault the prison in order to effect the escape of an inmate.

Pinkney communicated the above information to his superiors and the Prison System conducted an investigation. During the course of that investigation, Pinkney refused to disclose the name of his informant even though he knew his identity, asserting that he could not break his word to an inmate. A Prison System investigator issued Pinkney a direct order to divulge the name of the inmate but Pinkney refused. The Prison System dismissed Pinkney, effective May 1, 1990, for refusing to cooperate with the investigation and jeopardizing the safety and welfare of the staff and inmates of Holmesburg Prison.[1]

Pinkney appealed his termination to the Civil Service Commission, and a hearing was conducted. Before the Commission, Pinkney testified that he did not know the name of the inmate and had made an attempt to locate the person, but the Commission rejected that testimony as not credible. The Commission, instead, accepted the testimony of Lieutenant William Tagye, who stated that Pinkney refused to provide the name of the inmate because Pinkney had told him that he would not break his word to the prisoner. The Commission found as fact that Pinkney knew the name of the informant and had refused to reveal his identity to the Prison System out of a misguided sense of loyalty to the inmates. The Commission concluded that the security risk caused by Pinkney's actions justified the termination of his employment.

Thereafter, Pinkney appealed to Common Pleas, which, on June 9, 1994, reversed the Commission's decision. Common Pleas concluded that Pinkney's discharge was without just cause because Pinkney had a reasonable belief that the identity of the informant was privileged. Pinkney was ordered reinstated and the case was remanded to the Commission solely to determine whether Pinkney was entitled to backpay. Neither party appealed the Court's June 9, 1994 order within thirty days because the order was interlocutory.

On remand, the Commission, on February 22, 1995,[2] denied Pinkney backpay, concluding that the security risk caused by Pinkney's refusal to reveal the name of the informant rendered backpay unwarranted. Pinkney, then, filed a second appeal to Common Pleas challenging the Commission's denial of backpay.[3] The Prison System also

---

1. The Prison System cited to the following prison regulations, known as the Employe Operational Procedures, which Pinkney violated by refusing to reveal the name of his informant: 1.4 (failure to execute a "lawful" order issued by a supervisor); 1.5 (requirement that employees cooperate with management to maintain prison security and order); 1.6 (employees required to properly conduct themselves on or off duty) 1.36 (employee required to communicate information to prison officials that may endanger the security of the institution); 1.37 (employees subject to disciplinary action for failure to carry out orders and

thereby lowers the security of the prison); and 1.48a (need to report to the warden violations of security practices and procedures).

2. The Common Pleas Court actually remanded the matter to the Commission twice, but that fact has no significant bearing on this appeal.

3. After Pinkney filed his second appeal to Common Pleas, the Philadelphia Prison System and the Commission each appealed to this Court from the June 9, 1994 order of the trial court ordering Pinkney reinstated. Those appeals

filed an appeal from this same adjudication challenging the reinstatement of Pinkney which related back to the interlocutory order of the Court on June 9, 1994.

On May 11, 1995, the Common Pleas Court first entered an order affirming the Commission's decision to deny Pinkney backpay,[4] and then entered a second order quashing the Prison System's appeal on the grounds that the Prison System was not aggrieved by the Commission's order denying backpay. The Prison System then filed an appeal with this Court challenging the order quashing its appeal to the Common Pleas Court, and the Commission filed an appeal challenging the lower court's order reinstating Pinkney.

On appeal, while the Commission and the Prison System filed separate appeals from Common Pleas' May 11, 1995 orders, their arguments are identical and challenge only the merits of the June 9, 1994 interlocutory order of Common Pleas reversing the Commission's decision upholding Pinkney's termination. Specifically, the appellants contend that Common Pleas erred as a matter of law in holding that the Prison System did not have just cause to terminate Pinkney from his employment. We agree. However, before we reach the merits, there are threshold issues of standing which we must first address.

■ Pinkney, in his appellee's brief, raises these threshold issues, namely, whether either the Commission and/or the Prison System have standing to pursue the instant appeal. Specifically, Pinkney asserts that the **Prison System** cannot be aggrieved by Common Pleas' May 11, 1995 order quashing its appeal, because it "won" before the Commission on the backpay issue. This assumes, without articulation, that the trial court's final order of May 11, 1995, technically dealt

only with the one issue, that is, Pinkney's backpay. Pinkney further claims that the **Commission** lacks standing to appeal, because it is a quasi-judicial tribunal and cannot be aggrieved by decisions which it issues.

With regard to the **Prison System's appeal**, we conclude that it is aggrieved by Common Pleas' May 11, 1995 order, since that order quashed its appeal from the Commission and put the Prison System out of court. Further, although Pinkney argues that the Prison System was victorious on the backpay issue, the Common Pleas Court, on June 9, 1994, entered an order, albeit interlocutory at the time, which reversed the Commission's decision to uphold Pinkney's termination, reinstated Pinkney to his job, and remanded the case to the Commission only to resolve the issue of whether Pinkney was entitled to backpay.[5] The Prison System was clearly aggrieved by that decision, and simply because that order was interlocutory which could not be appealed as of right at that time the Prison System was not precluded from seeking future appellate review on the termination issue when the final order of the lower court was entered on May 11, 1995.

Were it otherwise, a situation would exist where a determination on the merits of one issue would completely evade appellate review when a trial court, or administrative agency, remands the matter for a determination of an entirely different second issue and *that* issue is then resolved in favor of the party who lost on the first issue. The jurisprudence of this Commonwealth will simply not permit that to occur. Accordingly, the Prison System was correct to appeal the May 11, 1995 order, not to attack the Commission's denial of backpay, but to preserve for appellate review the prior order of Common

---

were based on the theory that, although the June 9th remand order was interlocutory, because the Commission decided the backpay issue on remand on February 22, 1995, the June 9th order had now become a final order. On April 20, 1995, however, this Court concluded that the June 9, 1994 order remained an unappealable interlocutory order and, accordingly, quashed the appeals. (Those appeals are docketed at No. 2581 C.D.1994 and No. 839 C.D.1995.)

4. The order reads, in pertinent part, "this appeal is denied and the decision of the CSC dated 2/22/95 is affirmed. CSC reached the 'right' result albeit for the wrong reason."

5. A court order remanding a matter to an administrative agency is interlocutory and unappealable. *Gatti v. Zoning Hearing Board*, 117 Pa. Cmwlth. 399, 543 A.2d 622 (1988). Moreover, this Court, in fact, quashed the appeals from the June 9, 1994 order because it was interlocutory. (*See supra* note 3.)

Pleas reinstating Pinkney to his employment. ("Second Statement of Matters Complained of [on Appeal]" at 2–3; Reproduced Record at 149(a)–50(a).) Hence, even though the Prison System was not aggrieved by the Commission's decision to deny Pinkney backpay, that is only one of the issues in this case; as the Common Pleas' May 11, 1995 order was the only final order entered in the course of this litigation, the Prison System could appeal that order to this Court. Thus, we hold that the Prison System has standing to appeal.

■ However, with regard to the Commission's appeal, we are constrained to agree with Pinkney that the Commission does not have standing.[6] In *New Plan Realty Trust v. Tax Review Board*, 675 A.2d 802 (Pa. Cmwlth.1996), we held that Philadelphia's Tax Review Board was a quasi-judicial tribunal and, thus, did not have standing to appeal. We explained as follows:

> [C]ourts and quasi-judicial tribunals function as **neutral** third parties responsible for resolving disputes. When a court or quasi-judicial tribunal hears a case, the dispute is between the litigating parties and not between the tribunal and the parties.... Hence, as a neutral decision maker, an adjudicating body does not ordinarily have a direct, immediate, or substantial interest in the litigation before it and thus cannot be aggrieved by subsequent judicial reversals of decisions that it originally issues.

*Id.* at 804 (emphasis added) (citation omitted). Therefore, because the Tax Review Board functioned as a quasi-judicial tribunal and its role in the matter was limited to arbitrating the controversy between the taxpayer and the City of Philadelphia, we held that it did not have standing to appeal a common pleas court order reversing one of its decisions. *Accord Philadelphia Board of Pensions and Retirement v. Pearlman*, 137 Pa.Cmwlth. 146, 586 A.2d 466, *petition for allowance of appeal denied*, 529 Pa. 627, 600 A.2d 542 (1991) (City of Philadelphia's Pension Board, because it acts as a quasi-judicial

tribunal, does not have standing to appeal from matters which it originally adjudicated).

The Philadelphia Home Rule Charter states that the Civil Service Commission is an independent body, intended to serve as an appellate tribunal with authority to resolve employee disciplinary disputes. Section 7–100 and 7–201 of the Philadelphia Home Rule Charter (Charter), 351 Pa.Code § 7.7–100 and § 7.7–201. The Commission conducts public hearings and is required to issue written decisions on the cases it decides. Section 7–201 of the Charter, 351 Pa.Code § 7.7–201. The Commission is, therefore, clearly a quasi-judicial tribunal.

Here, the Commission functioned in the role of a neutral arbitrator of an employment dispute between the Prison System and Pinkney. Moreover, while the Commission argues that the City of Philadelphia has been the real party in interest during this litigation and that the Commission is merely a nominal party, the record reveals that the Commission filed the instant appeal. The relevant notice of appeal expressly states that the Commission is the appellant and does not mention the City. Following *New Plan*, we hold that the Commission cannot be aggrieved by Common Pleas' orders in this matter and, accordingly, the Commission's appeal is quashed.

However, because the Commission and the Prison System raise the same issue, and the Prison System's appeal is properly before us; we are able to reach the merits of this appeal.

■ The Prison System contends that Common Pleas erred in reversing the Commission's order affirming Pinkney's dismissal because the record shows that there was just cause to terminate Pinkney and that the choice of penalty was within the discretion of the Prison System. We agree.

■ Civil service employees of the City of Philadelphia may only be dismissed, demoted or suspended for just cause. Section 7–303 of the Charter, 351 Pa.Code § 7.7–303. Just cause is defined as follows:

6. On October 3, 1995, we issued an order directing that the issue of the Commission's standing to appeal be argued simultaneously with the merits of this case.

[J]ust cause for removal ... must necessarily be largely a matter of discretion on the part of the head of the department. To be sufficient, however, the cause should be personal to the employee and such as to render him unfit for the position he occupies, thus making his dismissal justifiable and for the good of the service.

... All that the law requires is that the cause be not religious or political, but concerned solely with the inefficiency, delinquency or misconduct of the employe. A wide latitude must be left to the superior officer—in fact a discretion conditioned only on its exercise in good faith and not as a screen for some reason not based upon the fitness of the employee to fill the position.

*Benvignati v. Civil Service Commission*, 106 Pa.Cmwlth. 643, 527 A.2d 1074, 1075 (quoting *O'Gorman Appeal*, 409 Pa. 571, 576–77; 187 A.2d 581, 583–84 (1963)), *petition for allowance of appeal denied*, 517 Pa. 600, 535 A.2d 1058 (1987). Whether the behavior of an employee constitutes just cause for his or her removal is a question of law. *Department of Corrections v. Roche*, 654 A.2d 64 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 541 Pa. 644, 663 A.2d 695 (1995). Once it is demonstrated that the public employer removed an employee for just cause, a court cannot modify or reverse the sanction imposed by the public employer. *Benvigati; Doerr v. Pennsylvania Liquor Control Board*, 88 Pa.Cmwlth. 610, 491 A.2d 299 (1985).

In our view, the facts found by the Commission demonstrate that Pinkney was dismissed from his employment for just cause. The Commission's undisputed findings show that Pinkney was told by an inmate that certain other unnamed inmates had possession of firearms, which might be used against the guards, and that persons outside the prison might attempt to attack the prison in order to allow an inmate to escape. Pinkney passed this information to his superiors and an investigation was initiated; however, when questioned by the Prison System, he refused to reveal the name of the informant, even disobeying a direct order to divulge that information. He thereby impeded the Prison System's investigation. The Commission specifically found that Pinkney knew the name of the prisoner, but refused to cooperate with prison officials out of a misguided sense of loyalty to the prisoners.

The information communicated to Pinkney, if true, constituted an extreme threat to the security of the Holmesburg Prison, the safety of Pinkney's fellow correctional officers, the inmates, and the public. In light of the above, the Commission properly affirmed the Prison System's decision to dismiss Pinkney. *See Roche* (prison guard's refusal to cooperate with an official investigation into allegations that other correctional officers assaulted prisoners, among other things, constituted just cause for dismissal). Therefore, we conclude that the Common Pleas Court erred in reversing the Commission's decision to affirm Pinkney's dismissal from his employment.

■ Pinkney contends that he refused to reveal the name of the informant because he had a good faith belief that the identity of the informer was shielded by an "informant's privilege." Contrary to Pinkney's argument, that privilege is inapplicable in this case.

"In Pennsylvania, courts have recognized that the **government** has a privilege to refuse to disclose the identity of persons who have given information to the government concerning the commission of crimes." Leonard Packel and Anne Poulin, Pennsylvania Evidence § 513 (emphasis added); *see generally, Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Because the right to refuse to reveal the name of a confidential source is a right of the **government**, Pinkney, as an individual, cannot invoke that privilege. Moreover, Pinkney has not cited, and our research has not discovered, a case where an employee has used the informant's privilege to withhold critical information from a government employer.

Pinkney asserts that his *belief* that he could invoke the privilege is sufficient to demonstrate that he had a good faith reason to refuse to provide the Prison System with the informant's name. Pinkney also claims that he feared the inmate would suffer reprisals if his name was revealed. But, regardless of Pinkney's beliefs and fears, in

light of the serious security threat to the prison, we cannot conclude that Pinkney acted reasonably, or more precisely, that the Prison System acted unreasonably. The Prison System, and not Pinkney, was in the best position to balance the degree of protection needed by the informant against the security risk to the prison. Therefore, Pinkney's arguments must fail.

Accordingly, the May 11, 1995 order of the Common Pleas Court quashing the Prison System's appeal is reversed as is the June 9, 1994 order reversing the Commission's decision to uphold Pinkney's discharge. The Commission's appeal is quashed.

### ORDER

NOW, February 6, 1997, in the appeal of the Philadelphia Prison System at No. 1460 C.D.1995, the order of the Court of Common Pleas of Philadelphia County entered on May 11, 1995 quashing the appeal of the Prison System is hereby reversed and the interlocutory order of June 9, 1994 reinstating Donald Pinkney to his position with the Prison System is likewise reversed. The adjudication of the Civil Service Commission dated December 20, 1990 is thus reinstated. The appeal of the Civil Service Commission of Philadelphia, at No. 1459 C.D.1995, is quashed.

FRIEDMAN, J., concurs in the result only.

The decision was reached before the conclusion of Senior Judge KELTON'S service.