## CITY OF PHILADELPHIA

v.

## CIVIL SERVICE COMMISSION

**Appeal of: Laureen M. Boles.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 2008.

Decided Feb. 9, 2009.

Alice W. Ballard, Philadelphia, for appellant, Laureen M. Boles.

Elise Bruhl, Philadelphia, for appellee, City of Philadelphia.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and FRIEDMAN,

Judge [1], and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Laureen M. Boles appeals from an order of the Court of Common Pleas for the First Judicial District (trial court) sustaining a demotion by her employer, the City of Philadelphia. In doing so, the trial court reversed the order of the Civil Service Commission of the City of Philadelphia (the Commission) restoring Boles to her former position as a Sanitary Engineer III with the City's Water Department. Concluding that the City's evidence demonstrated just cause to demote Boles, we affirm the trial court.

Boles, who has been employed by the City for 19 years, was out of work due to illness for approximately one year. She returned to work in June 2004, and was assigned to the Watershed Protection Office (Office) as a Sanitary Engineer III. Effective January 8, 2005, Boles was demoted to Sanitary Engineer II for the stated reason that she did not complete a project in accordance with the directions of her supervisor. Boles appealed her demotion, and the Commission conducted a hearing.

At the hearing, Boles' immediate supervisor, Christopher Crockett, testified to the events surrounding her demotion. Boles joined the Office on June 28, 2004, and the next day, Crockett, the manager of the Office, met with Boles. He assigned her the project of planning the Watershed Technology Center, which was being established to provide technical watershed information to developers and regulators, as well as to the general public. Although a Sanitary Engineer III should be able to handle multiple projects simultaneously, Crockett explained that he assigned Boles this single project as a "warm up" assignment, one easily within the ability of a Sanitary Engineer III. The day after their meeting, Crockett e-mailed Boles a timeline for completing certain tasks.

On July 22, 2004, Crockett met with Boles to discuss her progress on the timeline and discovered that Boles had not yet interviewed staff members, which was the critical first step he had identified in his timeline. Boles gave Crockett some PowerPoint slides, consisting of bullet points taken out of a 1997 document that were, in Crockett's view, vague. It became apparent to Crockett that Boles was taking a very minor part of the project, *i.e.*, finding a physical location for the center, and turning it into her principal focus. Crockett coached Boles to redirect her efforts so that the project could be completed in a timely manner.

Crockett met with Boles again in August. At that point, Boles still had not interviewed the Office staff, as had been directed. Again, Boles gave Crockett the same PowerPoint slides she had produced in July but in a new format. Crockett again explained to Boles what she had to do. He found himself "thoroughly confused as to ... why these things were not being done." Reproduced Record at 67a (R.R. ____). Crockett gave Boles an extension to August 19, 2004, to meet with Office staff. Boles did not meet this deadline.

On August 20, 2004, Crockett gave Boles a "special performance report," giving her an unsatisfactory performance rating "to alert her to the seriousness of the situation" and to explain, in writing, what she

---

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

needed to do to achieve satisfactory performance. R.R. 67a–68a. The report stated, *inter alia,* that Boles "has missed critical project deadlines," "has not shown acceptable initiative," and "is not engaging [Office] staff regarding her tasks as directed in progress meetings." R.R. 151a. Boles was given until September 2, 2004, to complete an initial comprehensive conceptual design and to lead a brainstorming session with the entire Office staff. She was also given until September 27, 2004, to complete a final draft of a plan for the center. Boles did not appeal Crockett's performance report.

Crockett testified that Boles told him that she had tried to set up a meeting with staff on August 26, 2004. Boles did not invite Office staff, as directed, but instead requested the Office managers to invite their staffs. However, the invitations, sent by e-mail, did not reach all Office managers. In any event, it was not the managers' responsibility to help Boles set up this meeting, according to Crockett. Further, Boles did no follow up to find out which staff members would attend. Because the meeting did not take place on August 26, 2004, Crockett revised the timelines for the project, pushing everything back. Again, Crockett met with Boles to re-explain the tasks to be completed. Crockett testified that "I asked her if she was okay with those [tasks], what changes needed to be made, if I was asking for too much, what else needed to be communicated— she said, no, this is clear." R.R. 69a.

On August 30, 2004, Crockett produced a new timeline for Boles' project. Boles missed a September 3, 2004, deadline. Crockett concluded that Boles was not trying to improve her performance and that she was not keeping him informed. On September 17, 2004, Crockett sent Boles a memorandum stating that she needed "to really start performing like an Engineer III and to just demonstrate some basic abilities." R.R. 71a.

On September 23, 2004, Crockett and another manager met with Boles. Boles gave them the same material she provided Crockett in August but in a larger font. Crockett told Boles that there were major items to be undertaken before the upcoming October 6, 2004, staff presentation on the plan for the Watershed Technology Center. At that point, Boles requested a week off and threatened to call in sick on October 6, 2004, and miss the meeting if she were not granted vacation time. Crockett acquiesced to Boles' vacation demand because the time he had been spending with Boles was beginning to impact his other duties. Crockett also spoke to Human Resource staff about disciplinary action.

On October 6, 2004, Boles was reassigned to another manager. The Watershed Technology Center project was removed from Boles, who had spent 440 hours on the project and never completed Phase 1 of the three project phases. The project was reassigned to a consultant with a similar professional background to Boles, and this consultant completed the project in 170 hours.[2]

Crockett's supervisor, Howard Neukrug, testified that he met with Boles on August 26, 2004, to discuss the special performance report. Boles stated that she thought her work was good and that she had not spoken to Neukrug about the performance evaluation earlier because she was busy working on a report. However,

2. Crockett explained that he had a limited number of staff and there was a hiring freeze in the City, leaving Crockett with "an office that was fully booked, double-booked, triple-booked with activities." R.R. 85a. Accordingly, Boles' project was assigned to a consultant.

when Neukrug asked for a copy of that report, Boles replied that she was too busy to make copies and never supplied one to Neukrug. Neukrug testified that the Watershed Technology Center project was appropriate for a Sanitary Engineer III and was "a perfect assignment" for Boles. R.R. 92a.

Francis Meiers, the Department's Assistant Personnel Officer, confirmed that Boles never appealed her special performance report. Meiers reassigned Boles to another supervisor in October. After a hearing he conducted on November 9, 2004, Meiers recommended to the City Water Commissioner that Boles be demoted. The recommendation was accepted, and Boles was demoted to Sanitary Engineer II effective January 8, 2005.

In response to the City's case, Boles testified that she performed most of the tasks that Crockett assigned to her in June 2004. Boles acknowledged that she was instructed to meet with Office staff by July 21, 2004, and that she did not do so. Boles explained that, instead, she conferred with people outside the Office and spent her time trying to find a location for the center. Boles felt that she "had shown quite a bit of initiative" on the project and disagreed with Crockett's assessment that her performance was unsatisfactory. R.R. 108a. Boles pointed to an e-mail from Crockett in which he stated that she had made good progress.[3] This e-mail was sent two days after she received the assignment. Boles testified that she sent invitations to managers for a staff meeting on August 26, 2004, but some managers did not receive it. She acknowledged that the managers who did receive the invitation did not invite their staffs, as Boles had requested. Boles did not know why this

was so. Boles felt that, in any case, she did not need to meet with Office staff because her real goal was to gather information, which she obtained from websites and from persons outside the Office. Boles testified that she was working on the goals assigned by Crockett and thought everything was going well with the project.

The Commission sustained Boles' appeal, concluding that the City failed to prove that it had just cause to demote Boles. The Commission explained as follows:

> The Commission concludes that [Boles] performed her job duties even if in a manner different than what Crockett would have liked. As an Engineer III, [Boles] had some discretion as to how to complete her tasks. [Boles] chose to speak with persons outside the Department to get her information after she had no success meeting with persons within the Department. The Department's complaints about [Boles'] use or lack of use of e-mail and her failure to sign in are not persuasive in its decision to demote. Even if the Commission were to conclude that there are some stylistic issues that need to be worked out between [Boles] and management, [Boles] was not given sufficient time to perform her tasks and to achieve success. The evidence in the case shows that [Boles] was micro-managed following her return from leave, which led to her demotion. After more than twenty years of service to the City and several years as an Engineer III, the Commission believes that the Department has not shown that [Boles'] performance over a **three to four month period** warrants demotion.

---

3. The e-mail stated, "[t]o date you've made good progress on the initial WTC conceptualization now, we need to fill in some of the blanks in your outline." R.R. 155a. This e-mail was sent July 1, 2004.

Commission opinion, February 10, 2006, at 3–4 (emphasis in original).

The City appealed, and the trial court reversed the Commission's decision. In doing so, the trial court determined that the Commission's findings were not supported by substantial evidence and that there was just cause to demote Boles. The trial court pointed to the evidence that Boles failed to complete several assignments and that her supervisor met with her numerous times to discuss her substandard work and to set goals to improve performance. The trial court explained that Boles

did not present evidence to refute the allegations contained in her notice of [demotion]. She asserted only that she performed her duties despite her superior's characterization of her performance. As Engineer III, Ms. Boles possessed discretion in how to perform her job duties, but that does not negate the fact that she worked under the direction of a higher level manager and she repeatedly failed to meet performance standards.

Trial court opinion, February 13, 2008, at 3. The matter is now before this Court.

■ On appeal,[4] Boles raises one issue for our consideration. She argues that the Commission's decision sustaining her appeal must be affirmed because its factual findings are supported by substantial evidence. Specifically, Boles asserts that the evidence supports the Commission's find-

ings that Boles performed her job duties, albeit in a manner different from what Crockett desired; that Boles had discretion as to how to complete her tasks and exercised that discretion reasonably; that Boles was not given sufficient time to perform her tasks successfully; and that Boles was micro-managed, the true cause of the demotion.[5]

The City counters that Boles' inability to manage one project and comply with the basic requirements of her job, despite repeated requests that she do so, constituted just cause for her demotion, and that the Commission erred in concluding otherwise. The City contends that the Commission abused its discretion because it does not have the power to substitute its discretion for that of the City's management. Further, it argues that the Commission's findings are not supported by substantial evidence.

■ Under the Philadelphia Home Rule Charter, "[a]ny dismissal or demotion after the completion of the required probationary period of service, or suspension of any employe in the civil service shall be for just cause only." 351 Pa.Code § 7.7–303. The term "just cause" is not defined therein, but Pennsylvania courts have explained:

What constitutes ample [just] cause for removal ... must necessarily be largely a matter of discretion on the part of the head of the department. To be sufficient, however, the cause should be per-

---

4. Our review of an adjudication of the Civil Service Commission is to determine whether the Commission violated the Constitution, erred as a matter of law or made findings of fact not supported by substantial evidence. *Civil Service Commission v. Poles*, 132 Pa. Cmwlth. 593, 573 A.2d 1169, 1171–1172 (1990). Substantial evidence has been defined as such relevant evidence that a reasonable mind might find adequate to support a conclusion. *Mrs. Smith's Frozen Foods Co. v. Workmen's Compensation Appeal Board*

*(Clouser)*, 114 Pa.Cmwlth. 382, 539 A.2d 11, 14 (1988).

5. Both Boles and the City also discuss the allegations that Boles either did not read or did not respond to important e-mails in a timely manner and that she did not keep track of her time appropriately. The Commission rejected these reasons for demotion as not persuasive. Based on our disposition of the case, we need not address this argument.

sonal to the employee and such as to render him unfit for the position he occupies, thus making his dismissal justifiable and for the good of the service. ... All that the law requires is that the cause be not religious or political, but concerned solely with the inefficiency, delinquency or misconduct of the employe. A wide latitude must be left to the superior officer—in fact a discretion conditioned only on its exercise in good faith and not as a screen for some reason not based upon the fitness of the employe to fill the position.

*Benvignati v. Civil Service Commission,* 106 Pa.Cmwlth. 643, 527 A.2d 1074, 1075 (1987) (quoting *O'Gorman Appeal,* 409 Pa. 571, 576–577, 187 A.2d 581, 583–584 (1963)). Therefore, the Commission must "defer to the discretion of the agency head on what was required 'for the good of the service.' " *City of Philadelphia, Department of Human Services v. Philadelphia Civil Service Commission (Steve Carter),* 895 A.2d 87, 94 (Pa.Cmwlth.2006). Whether an employee's behavior constitutes just cause for demotion is a question of law. *Pinkney v. Civil Service Commission,* 688 A.2d 1252, 1257 (Pa.Cmwlth.1997). If just cause exists, the Commission is not permitted to modify or reverse the sanction imposed by the employer. *Id.*

In accordance with these above-recited principles, we conclude that the Commission erred in holding that the City did not have good cause to demote Boles. The uncontroverted evidence shows that Boles was assigned one project and despite the fact that a Sanitary Engineer III should be able to handle multiple projects at one time, she failed to complete her single assignment.

Crockett provided detailed testimony regarding numerous instances between July 21, 2004, and October 6, 2004, where Boles missed critical project deadlines and gave

him inadequate work that was incomplete, vague or a repackaging of her prior work product in a different font. Crockett was not disbelieved by the Commission. Further, as noted by the trial court, Boles did not specifically rebut the City's version of the events. Rather, she merely insisted, in conclusory fashion, that she had shown initiative and that she had done a good job. However, Boles admitted that she never met with Office staff, which was the crucial first step for the project. Boles also acknowledged that she made no attempt whatsoever to meet with Office staff, despite repeated requests from her supervisor that she do so, until August 26, 2004. At that point, she did so in an inappropriate and ineffectual manner.

The Commission excused Boles by reasoning that she had discretion as to how to complete her tasks and that she "performed her job duties even if in a manner different than what Crockett would have liked." Commission opinion at 3. The Commission found that Boles had chosen to speak with persons outside the Office after she had no success meeting with persons within the Office. However, there is no substantial evidence to support the Commission's finding that Boles had the discretion to do her job in a manner contrary to Crockett's directives. As observed by the trial court, refusing to meet with Office staff, after repeatedly being instructed to do so, is insubordination. Further, Boles spoke with people outside the Office *after* she failed to set up a meeting with Office staff, and she did so without any authority or approval from Crockett.

Insubordination and failure to meet performance standards with respect to a project that Boles should have easily been able to complete, and which was, in fact, successfully completed by another person with similar skills in less than half the

time, provides just cause for demotion. *See Ming Wei v. State Civil Service Commission (Department of Health),* 961 A.2d 254 (Pa.Cmwlth.2008) (holding that insubordination and unsatisfactory work performance in failing to complete a project amounted to just cause for removal because it directly impacted on the employee's job performance).

The Commission committed further error when it concluded that there was not just cause for demotion because Boles "was not given sufficient time to perform her tasks and to achieve success" and that she was "micro-managed." Commission opinion at 4. These excuses for Boles' poor performance are likewise not supported by substantial evidence. Boles never complained at the hearing about micro-management, and Crockett testified that the reason he had to meet with Boles on a regular basis was to coach her because she was not completing her tasks. Further, there is not one iota of evidence that Boles was not given enough time to successfully complete the project. Crockett testified that, on the contrary, he pushed back deadlines more than once but it did not help. Boles herself never stated that she was not given enough time.

In short, the Commission's findings regarding Boles' performance of her work duties and the excuses for her poor performance are not supported by substantial evidence. The uncontroverted testimony of Crockett, which was not rejected by the Commission, supports the legal conclusion that the City had just cause to demote Boles. The Commission erred in substituting its judgment for that of Crockett, Neukrug, Meiers and the Water Commissioner that a demotion was warranted for the good of the Office.

For these reasons, we affirm the order of the trial court.

## ORDER

AND NOW, this 9th day of February, 2009, the order of the Court of Common Pleas of the First Judicial District in the above-captioned case, dated October 3, 2007, is hereby AFFIRMED.

DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that "[i]n short, the Commission's findings regarding Boles' performance of her work duties and the excuses for her poor performance are not supported by substantial evidence." Majority Opinion at 11.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Civil Service Commission, City of Philadelphia,* 518 Pa. 170, 174, 542 A.2d 519, 522 (1988). It is more than just a "scintilla" of evidence and must do more than create a suspicion of the evidence of the fact to be established. *Id.*

In the present controversy, the Department sent a Notice of Intention to Demote for the following:

. . . .

At that time [July 23, 2004], your supervisor established a target date of August 19, for you to present an outline of your plan to a brainstorming session with the rest of the OOW [Office of Watersheds] staff. At that time, you indicated the August 19 date did not pose a problem.

. . . He [Supervisor] stressed to you that the OOW staff members should be notified of the August 19 meeting no later than August 12.

. . . .

On August 19, the date on which your meeting with OOW staff was supposed to be held, no meeting occurred . . . [o]n

that date, he also learned that you had almost no contact with OOW staff regarding the WTC Project.

. . . .

On August 26, only one of 22 staff members of OOW attended your meeting because of lack of timely notice, or follow up by you. . . .

On August 27, your supervisor spoke with you, and a new task/list, which you agreed to, was established. That plan included a draft WTC plan distributed to OOW staff by September 3. At that time, you told your supervisor you did not need assistance on the project.

Your deadline of September 3, was missed. . . .

Notice of Intention to Demote, January 7, 2005, at 2–3.

With regard to the assignment deadlines, Boles testified before the Commission:

Q: Now, you indicated that you were not given particular deadlines to meet. But yet, if you take a look at your exhibit number 1 from the e-mail from Chris Crockett to you, there's a deadline of July 21st with respect to meeting-to developing missions, goals and objectives. Isn't that true?

A: Right. *I don't think I said that I didn't get deadlines.* (emphasis added).

Q: Okay, so there were deadlines. Did you meet this July 21st deadline?

A: Yes.

Q: You did? Is that this document?

A: No. In fact, there are several documents, some of the Powerpoint presentations, and there was also written documentation that shows that-and the matrix we spoke about.

. . . .

Q: This may be August 26th okay. Now I notice throughout the document there are a lot of bullets without any

elaboration. Was this what you considered to be your final document?

A: No.

Q: So-and this was the end of August?

A: This was August 26th, yes.

Q: So you presented this to Mr. Crockett and he told you this was not satisfactory? Is that correct?

A: No.

. . . .

Q: Okay, on August 26th—you presented this to him on August 26th. What did he say?

A: He had another meeting to go to, he would try and sit with Brian and I to go through some of the documents-through the documents we had. It was that, the Powerpoint presentation, as well as the matrix. *I was given a whole set of tasks-a new set of task [sic] to go along with-new assignments were given based on this document. I completed the task that he had asked for in order to prepare this document, and on that date I got a new set of assignments.* (emphasis added).

Q: Did he ever indicate to you that the work that you presented was not satisfactory?

A: Not in writing—no. What he said to me was-this is what was completed. The task that I had, this is what I used to complete it, right? Then, on that date, I was asked to then provide goals and objectives, some questions for the staff about how to make this a better document.

. . . .

Q: That's fine. Just–I would-if she could just tell us when those documents were completed?

A: This was September 23rd, it would be a Thursday. I had a meeting with Chris Crockett, and got new direction.

*This is why-well, you know, the project is not complete. You cannot go on vacation because you haven't completed these assignments. So that very day, I completed the documents.* We had a meeting scheduled for September 24th—because I was to go on vacation that following week-which was a Friday. The meeting was cancelled by Mr. Crockett .... (emphasis added).

Notes of Testimony (N.T.), June 22, 2005, at 64–65, 68, and 70; Reproduced Record (R.R.) at 117a–18a, 121a, and 123a.

With regard to the scheduling of the project staff meeting, Boles testified:

Q: The meeting on August 26th to interview staff members or to get their feedback, can you outline what you did to call that meeting?

A: *I sent an e-mail to the managers, as I was told by Mr. Crockett to do-sent an e-mail to the managers and asked them to invite their staff-that might be the best way to do it.* I agreed with him because I didn't know what staff should be working on the Watershed Technology Center and I didn't want to have a meeting with twenty people, thirty people if you count the consultants. *So I sent an e-mail to the managers.* There was one manager, Joanne Dahme, who said the date was not good for her, and I said well, when I hear from the other staff members, I'll let you know if we can move the dates around, and she said fine. *What I did was I gave her a copy of the draft document that we were going to be looking over.* She did say she had another meeting to go to. So what she did was she made comments for me and gave that to me prior to us meeting. (emphasis added).

Q: okay.

A: Mr. Crockett did come over and, you know, said that he didn't get the e-mail about the meeting. And I had said,

well, you know, your e-mail did decline but we're trying to schedule the date. So if the dates don't work for all managers, then we'll have to reschedule anyway. *At that point, he went downstairs to Seth Tannenbaum, to our computer experts, and wanted to know why he didn't get an e-mail about the meeting, where obviously Joanne had gotten it.* Brian said he didn't get it, but Brian did attend the meeting, so I'm not sure how two or three could have gotten it.

N.T. at 59–60; R.R. at 112a–13a. Boles also testified that she sought feedback from persons unable to attend and that she spoke to persons outside the Department and reviewed websites to collect additional information. N.T. at 51; R.R. at 104a. Although, Boles did not have "face-to-face meeting", Boles testified that she obtained the requested information. N.T. at 66–67; R.R. at 119a–20a.

After review of the evidence, I concur with the Commission's determination that the Department failed to meet its burden of proof:

*... Appellant [Boles] performed her job duties even if in a manner different than what Crockett would have liked.* As an Engineer III, Appellant [Boles] had some discretion as to how to complete her tasks. Appellant [Boles] chose to speak with persons outside the Department to get her information after she had no success meeting with persons within the Department. *The Department's complaints about Appellant's [Boles'] use or lack of use of e-mail ... are not persuasive in its decision to demote.* Even if the Commission were to conclude that there are some stylistic issues that need to be worked out between Appellant [Boles] and management, Appellant [Boles] was not given sufficient time to perform her tasks and to achieve success.... *After more than*

*twenty years of service to the City and several years as an Engineer III, the Commission believes that the Department has not shown that Appellant's [Boles'] performance over a three to four month period warrants demotion.* (emphasis added).

Opinion of the Civil Service Commission, February 10, 2006, at 3–4.

I would reverse the trial court.

Judge PELLEGRINI joins in this dissent.