# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia           :
                                   :
            v.                :
                                   :
City of Philadelphia Civil    :
Service Commission and     :
Jason Collins              :
                                   :   No. 1972 C.D. 2016
Appeal of: Jason Collins    :   Argued: October 19, 2017

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: November 21, 2017

          Jason Collins (Collins) appeals from the Philadelphia County Common Pleas Court's (trial court) June 22, 2016 order granting the City of Philadelphia's (City) appeal and overruling the City Civil Service Commission's (Commission) September 9, 2015 decision that sustained Collins' appeal and reinstated him to his position as a trash collector for the Sanitation Division of the Department of Streets (Department). The issue before this Court is whether the Commission properly ordered Collins' reinstatement and whether the trial court erred when it reversed the Commission's decision. After review, we affirm.

          On December 15, 2014, Collins was working as a trash collector for the Department. That same date, Bernard Freeman (Freeman) approached City police officer Ernie Williams (Officer Williams) at 65th Street and Haverford Avenue with a large, bloody cut on his face and blood on his clothing, alleging that a Department employee had struck him in the face in the area of 38th and Cambridge Streets. The

Department investigated the incident, determined that Collins was the offending employee and held a hearing on December 17, 2014. Thereafter, the Department placed Collins on indefinite suspension without pay, and recommended his dismissal. Collins appealed from that decision, and a hearing was held before the Department's Deputy Commissioner on December 24, 2014. The Deputy Commissioner upheld the Department's dismissal recommendation. On January 5, 2015, the Department served upon Collins a "Notice of Dismissal," discharging him effective January 16, 2015. Reproduced Record (R.R.) at 14a. On January 6, 2015, the Department served Collins with a "Notice of Intention to Dismiss," informing Collins that his employment would end "[e]ffective ten days from service of this notice[.]" R.R. at 16a. The sole reason provided for dismissal in both notices was "Workplace Violence." R.R. at 15a, 17a.

On February 10, 2015, Collins appealed from the Department's decision to the Commission. On August 11, 2015, the Commission held a hearing. The Department presented the testimony of three witnesses. Department District Supervisor Barbara White (White) testified that, on December 15, 2014, the police notified the Department that a representative needed to respond to a report of an alleged assault. Department District Supervisor Joanne Brown (Brown) met with police. White related that she investigated the alleged assault after discovering that it occurred in her assigned district. White stated that she learned that Freeman had sustained a black eye and needed hospital treatment, she identified the employees working the route and she ultimately discovered that Collins was the alleged perpetrator. White admitted that she did not speak to Freeman, but rather spoke to a resident on the block who claimed to have seen the incident (Resident Witness).[1]

---

[1] The Department did not clearly identify the Resident Witness. Counsel and witnesses referred to him as "Mr. James," "Mr. Jimmy," "Jimmy James" or "Jimmy something." R.R. at 29a, 48a.

White described that the Resident Witness expressed that a Department employee knocked Freeman to the ground and kicked him. White recalled Collins reporting to her that Freeman attempted to throw something into Collins' truck and Collins tried to stop him. White explained that Department policy prohibits anyone other than a Department employee from throwing anything into the sanitation truck. The Department instructs and regularly reminds employees that if an individual becomes hostile, the employees are to lock-up the truck, leave the area and notify a supervisor.[2] White stated that Collins did not inform his supervisor of the incident.

Officer Williams testified that he and his partner were sitting in their patrol vehicle at 65th Street and Haverford Avenue when Freeman knocked on the vehicle window. Officer Williams observed that Freeman had a large cut and blood on his face, and blood on his clothing. Officer Williams recalled Freeman informing him that he was punched in the face by a sanitation worker in the area of 38th and Cambridge Streets. The Department's counsel showed Officer Williams a photograph of Freeman and Officer Williams confirmed that it was an accurate depiction of Freeman at the time he observed him. Officer Williams further recounted that he offered to call medics, but Freeman declined, stating that he would go to the hospital.[3] Officer Williams requested by radio that a Department Sanitation Supervisor be notified. Thereafter, Brown arrived at Officer Williams' location and spoke with Officer Williams and Freeman. Officer Williams explained that he did not speak to any individuals other than Freeman and Brown. In Officer Williams' opinion, Freeman's injuries were consistent with being struck in the face with a fist.

---

[2] White also testified that if a resident is violent towards a Department employee, a Department agreement with the City Police Department provides that the Police Department will respond as if a police officer is in trouble. The Department also asks the crew to assist an employee in escaping the situation, leaving the area and calling the police.

[3] According to Officer Williams, Freeman stated that he had briefly waited for police at the scene of the incident but left to go to the hospital and, while en route, stopped Officer Williams' vehicle to report the incident.

Department Human Resources Professional Clinton Gibson (Gibson) testified that if a resident attempts to throw something into a truck, Department employees are supposed to lock down the truck, leave the area, and notify a supervisor who will address the situation. Gibson further stated that Department workers are not supposed to engage with citizens. Gibson described that he attempted to interview the two crew members working with Collins on the day of the incident, but they refused to cooperate or provide information. Gibson explained that he reviewed the Resident Witness' statement which described Collins punching Freeman, pushing him down and then stomping on Freeman's head until Collins' co-worker pulled him off. Gibson recalled that he spoke to Collins, who told him that Freeman attempted to put a trash bag in the truck in violation of Department policy. Gibson reported that Collins also told him that he and Freeman got into an argument, Collins pushed Freeman, and Freeman fell over trash laying on the ground and hit his head on the pavement. Gibson asserted that Collins never said he locked the truck down.

Gibson concluded based on the investigation, his discussions with Collins and individuals who spoke with the witnesses, and his review of Freeman's and Resident Witness' statements, that Freeman approached Collins and attempted to put the trash bag in the truck, at which time Collins punched and pushed Freeman. Gibson noted that Collins had "prior issues with his temper and . . . on that day, it sounded like he lost it once more and assaulted a citizen."[4] R.R. at 46a. Gibson

---

[4] Gibson testified that the Department had previously suspended Collins under similar circumstances. Collins' counsel objected, and after an off-record discussion, the Commission's Executive Assistant stated, "the Commissioners do have a copy of [Collins'] disciplinary record as part of its file. So there's no need – it's duplicative." R.R. at 44a. Notwithstanding, that disciplinary record is not part of the certified record before this Court and that testimony may not and will not be considered. *See Pa. Tpk. Comm'n v. Unemployment Comp. Bd. of Review*, 991 A.2d 971, 974 (Pa. Cmwlth. 2009) ("This Court may not consider any evidence that is not part of the certified record on appeal.").

explained that, as a result, the Department held a hearing[5] and, thereafter, recommended Collins' discharge based on his admission that he pushed Freeman in violation of the Department's Workplace Violence Policy (Violence Policy).[6]

Collins described the December 15, 2014 incident as follows:

> This is our regular route. So we were working the block and there was a guy out there and he had construction out. So, as he started walking toward the truck with a bag, I told him, you can't. . . . And as he grabbed the bag and walked toward the truck, he went to put it in and I stopped him and I told him you can't put it in the truck. And he said he's going to put it in the truck. So I locked the truck up. . . . And then he got a little mad, then I took the bag and sat it back on the curb and he grabbed me by my shirt. And when he grabbed me, I shoved him off me. When I shoved him, he fell over the trash that was still there -- everything that he had there. At this point, I hopped in the truck and I told the driver to just leave the block, leave the block completely.

---

[5] The Department did not transcribe or otherwise preserve statements made at the Department hearings in this matter. *See* R.R. at 60a-61a.

[6] Collins' counsel stipulated to the existence of the Department's Violence Policy and that Collins was aware of the Violence Policy. *See* R.R. at 44a. Collins also admitted that he was aware of the Violence Policy. *See* R.R. at 67a. The Department's Violence Policy states in relevant part:

> It is the [] Department's policy to promote a safe work environment for all employees. The Department is committed to maintaining a work environment free from violence, threats, harassment, intimidation, and other behavior that threatens the safety of employees and citizens.
>
> These behaviors will not be tolerated in our workplace, and the [D]epartment will deal with all reported incidents in an expedient and effective manner. Such behaviors can include oral or written statements and gestures or expressions that communicate a direct or indirect threat of physical harm. This policy also applies to intentional damage to [] Department or employee property. Individuals who commit such acts shall be removed from the premises and shall be subject to severe disciplinary action, including dismissal and criminal penalties, where applicable.

R.R. at 83a.

5

R.R. at 65a-66a. Collins acknowledged that "I should have - as soon as we left the block - actually, **I should have never pushed him. I should have eliminated myself from the situation altogether and called the police and my supervisor.**" R.R. at 66a (emphasis added). Collins explained his reason for not calling his supervisor, stating:

> Because it was more of a panic thing because I knew he was a resident, and the City has this thing - well, to my understanding, the City has this thing whereas though, when it's something with the resident, it's like they instantly take the resident's side. We have no fight against them. So it's like – I'm like – once I knew he fell over there, I'm like, I got to get out of here because they're going to automatically take his side. It's going to be something bigger than it has to be.

R.R. at 67a.

On cross-examination, Collins acknowledged that he did not notify his supervisor of the incident and did not call the police. He further stated:

> Once [Freeman] fell over all that trash, I got in the truck and I told my driver to leave the block immediately. . . . I said I shoved him, he stumbled over the trash. When -- I did not stick around for him to fall on the ground or see what happened after. I immediately jumped in the truck and told my driver to leave the block.

R.R. at 68a-69a. Collins admitted he knew that Department policy required he call his supervisor under such circumstances, but did not do so. Collins contended that the Violence Policy does not prevent him from defending himself, but acknowledged, "**I was in the wrong for allowing myself to not step away from the situation as soon as he grabbed me and calling the police.** Yes, I was in the wrong for that. But defending myself, . . . I was not." R.R. at 69a-70a (emphasis added).

6

The Commissioners also questioned Collins. He described the incident again, stating:

> We were throwing the trash. I was actually working that side of the street. I saw the construction. [Freeman] was standing there. . . . As the truck pulls up in front of his trash, he grabs a bag and starts walking toward the truck. . . . He picked up the bag as soon as the truck stopped. He picked up the bag and start[ed] walking toward the truck. . . . As he walked toward the truck, I kind of stepped in front of him and said, you can't put that in there. When he said -- he kind of already had already sat it on the truck, so I decided I'll lock the truck up. . . . I took the bag up and I sat it back on the curb -- I sat it back in front of him. That's when he grabbed me. And soon as he grabbed me, my reaction -- get off me, and I pushed him, [a]nd that's when he stumbled over the trash. . . . And then, at that point, is when I got in the truck and told my driver to leave the block completely.

R.R. at 73a-75a.

Collins specifically denied striking Freeman, but admitted, "when **I pushed him** off me . . . **he fell over** – I saw him fall over the trash and I got in the truck. . . . **He fell face first**." R.R. at 72a (emphasis added). When asked how Freeman fell forward since Collins pushed him backwards, Collins explained: "When I pushed him, he turned, and the normal reaction -- if somebody – if you're falling, you go to put your hands down to -- you turn around and put your hands down to brace yourself for the fall. I'm pretty sure that's how." R.R. at 76a. He stated that he first became aware that a complaint had been made regarding the incident in the afternoon after his crew was taken off the route. Collins recalled: "I told [the Department] like what initially happened, as though I was just -- he shoved me, I shoved him back, like -- I mean, he grabbed me and I shoved him off me." R.R. at 70a. Notably, Collins admitted that his co-workers did not speak about the incident because: "[H]onestly, I did not think it would go to the point it did. So when – I

7

asked them not to say anything. I asked them to stay out of it, let me handle it myself." R.R. at 73a.

> The Commission sustained Collins' appeal, holding:

> Following a thorough review of the evidence, the testimony of all the parties, and the relevant and applicable case law, we find that the Department has not met its burden of proof, namely, that there is sufficient, probative, substantial evidence to conclude that there was just cause for [Collins'] dismissal. To be sufficient, all the law requires is that the cause be not religious or political, but concerned solely with the inefficiency, delinquency or misconduct of the employee.

> In this case, we find [Collins'] request to overturn the Department's decision to be reasonable. The evidence presented by the Department was based mainly on hearsay - i.e., [Freeman's] statement to [] Officer Williams and a statement made to [] Brown by [Resident W]itness to the incident. While the Commission is not bound by technical rules of evidence, we cannot base a finding on hearsay evidence alone. Other than [Collins'] testimony, no other first-hand accounts were presented. In regard to the photograph of [Freeman], although it contained a handwritten date and place on the back, it was not properly authenticated via testimony or electronic date/time stamp. Therefore we cannot determine who took the picture, or when or where the injury depicted in the photo occurred. The Commission also finds troubling the fact that [Freeman] traveled some distance from the scene before reporting the incident to the police and seeking medical attention. Based on all of the above, the Commission finds that the Department has failed to meet its burden by sufficient, substantial evidence.

R.R. at 6a-7a. The Department appealed from the Commission's decision to the trial court. On June 21, 2016, the trial court held oral argument. On June 22, 2016, the trial court overruled the Commission's decision and granted the Department's appeal.

8

The trial court held:

> The law requires that just cause to terminate 'not be religious or political but concerned solely with the inefficiency, delinquency or misconduct of the employee[.'] *Civil Serv*[.] *Comm'n v. Poles*, 573 A.2d 1169, 1172 (Pa. C[mwlth.] 1990). In its review of a decision of a City department, the Commission must 'defer to the discretion of the agency head on what was required 'for the good of the service,'' *City of Phila*[.] *v. Civil Serv*[.] *Comm'n* [*(Carter)*], 895 A.2d 87, 94 (Pa. C[mwlth.] 2006).
>
> No evidence on the record before the [] Commission suggested that [] Collins was terminated for religious or political reasons. The sole reason for [] Collin[s'] termination was his personal misconduct. *See* Notice of Dismissal, dated January 5, 2015[, R.R. at 14a-15a]. The [] Commission is required by law to defer to the discretion of the [] Department, which concluded that [] Collins was not a suitable employee. There was ample evidence to suggest that [] Collin[s'] conduct was inconsistent with the [] Department's workplace policies.

R.R. at 121a-122a. The trial court also concluded that:

> Although the [] Commission takes issue with the hearsay nature of some of the testimony it heard, there was uncontested non-hearsay evidence that [] Collins violated the [] Department's [Violence Policy].
>
> Officer Williams testified that he observed [Freeman] shortly after the incident and that [Freeman] was bleeding from a cut on his face. Furthermore, [] Collins admitted that he pushed [] Freeman causing him to fall and injure himself. [] Collins testified that he was familiar with the [] Department's [Violence Policy]. [] Collins further recognized that he should have removed himself from the confrontation with [Freeman].

R.R. at 122a (citations omitted). Collins timely appealed to this Court.[7]

---

[7] "Our scope of review of an adjudication of the Commission is limited to determining whether the Commission violated the constitution, erred as a matter of law or made findings of fact not supported by substantial evidence." *City of Phila. v. Civil Serv. Comm'n (Johnson)*, 967 A.2d 1034, 1037 n.3 (Pa. Cmwlth. 2009).

9

This Court has explained:

Under the Philadelphia Home Rule Charter, '[a]ny dismissal or demotion after the completion of the required probationary period of service, or suspension of any employe in the civil service shall be for just cause only.' 351 Pa. Code § 7.7-303. The term 'just cause' is not defined therein, but Pennsylvania courts have explained:

> What constitutes ample [just] cause for removal . . . must necessarily be largely a matter of discretion on the part of the head of the department. To be sufficient, however, the cause should be personal to the employee and such as to render him unfit for the position he occupies, thus making his dismissal justifiable and for the good of the service.
>
> . . . All that the law requires is that the cause be not religious or political, but concerned solely with the inefficiency, delinquency or misconduct of the employe. A wide latitude must be left to the superior officer—in fact a discretion conditioned only on its exercise in good faith and not as a screen for some reason not based upon the fitness of the employe to fill the position.

*Benvignati v. Civil Serv*[.] *Comm*['n], . . . 527 A.2d 1074, 1075 ([Pa. Cmwlth.] 1987) (quoting *O'Gorman Appeal,* . . . 187 A.2d 581, 583-[]84 ([Pa.] 1963)). Therefore, the Commission must 'defer to the discretion of the agency head on what was required 'for the good of the service.'' . . . *Carter*[], 895 A.2d [at] 94 . . . . Whether an employee's behavior constitutes just cause for demotion is a question of law. If just cause exists, the Commission is not permitted to modify or reverse the sanction imposed by the employer.

*City of Phila. v. Civil Serv. Comm'n (Boles)*, 965 A.2d 389, 393-94 (Pa. Cmwlth. 2009) (citation omitted).

10

We agree with the trial court that the Commission erred. The Commission acknowledged that "[t]o be sufficient, all the law requires is that the cause be not religious or political, but concerned solely with the inefficiency, delinquency or misconduct of the employee." R.R. at 6a. Notwithstanding, the Commission failed to apply that standard.

There is no record evidence that the cause for removal was "religious or political[.]" *Id*. Instead, the Department's employment action against Collins was "concerned solely with the . . . misconduct of the employee[,]" in particular, his violation of the Violence Policy. *Id*. Although a substantial part of the evidence presented was indeed based on hearsay,[8] there was significant non-hearsay evidence supporting the Department's action and based thereon, the Commission was required to 'defer to the discretion of the agency head on what was required 'for the good of the service.'' *Boles*, 965 A.2d at 394. Specifically, Officer Williams observed Freeman shortly after the incident, and testified that the Department's photograph accurately represented Freeman's injured appearance at the time, and that based on his observations, he believed that Freeman had been assaulted.[9] Officer Williams' testimony regarding his observations was not hearsay. In addition, the Department's witnesses testified that Collins admitted he was involved in the incident and that he

_____

[8] "Hearsay is defined as an out[-]of[-]court statement, either written or oral, offered in court for the purpose of proving the truth of the matter contained in the statement." *Feinberg v. Unemployment Comp. Bd. of Review*, 635 A.2d 682, 685 n.4 (Pa. Cmwlth. 1993). Hearsay is generally not admissible unless it is subject to an exception. *See* Pa. R.E. 802. This Court has explained that "in limited circumstances - i.e., administrative and local agency proceedings - hearsay evidence admitted without objection will be given its natural probative effect and may support a finding of fact, this is so only if the hearsay evidence is corroborated by any competent evidence in the record." *Malloy v. Civil Serv. Comm'n of City of Phila.*, 645 A.2d 434, 435-36 (Pa. Cmwlth. 1994).

[9] Although the Department did not offer testimony authenticating the time and place the photograph was taken, and by whom, the photograph did contain a handwritten date and place on the back. More importantly, Officer Williams' testimony established that the photograph accurately represented how Freeman appeared at the time Officer Williams encountered him on December 15, 2014, following the incident.

11

shoved Freeman, causing Freeman to fall on his face. Such statements fall within the "Opposing Party's Statement" exception to the hearsay rule. *See* Pa. R.E. 803(25). Further, Collins' own testimony acknowledged his involvement. Collins admitted he "shoved" Freeman, who fell on his face as a result. R.R. at 66a, 69a, 70a. Notably, Collins did not testify that he asked Freeman to remove his hands, that he attempted to remove Freeman's hands or otherwise diffuse the situation, or that he believed a violent response was necessary for his safety.[10] Although Collins explained he "shoved" Freeman after allegedly being grabbed, Collins' testimony did not justify his violent, amplified response to Freeman's alleged conduct. *Id*. After "shov[ing]" Freeman and causing him to fall on his face from which Freeman sustained injuries, Collins essentially fled the scene, asked his co-workers to remain silent about the incident, and failed to report the incident in accordance with Department policy. R.R. at 66a, 69a, 70a. Collins' own statements established these facts. The Department's Violence Policy prohibits "violence, threats, harassment, intimidation, and other behavior that threatens the safety of employees and citizens[,]" and warns that employees who engage in such acts are subject to dismissal. R.R. at 83a. The non-hearsay evidence presented at the Commission's hearing demonstrates that Collins violated the Department's Violence Policy. Substantial evidence supported the Department's action, and the Commission should have deferred to the Department's discretion. Accordingly, the Commission erred by sustaining Collins' appeal and ordering his reinstatement.

---

[10] Collins testified: "I should have never pushed him. I should have eliminated myself from the situation altogether and called the police and my supervisor." R.R. at 66a. He also admitted, "I was in the wrong for allowing myself to not step away from the situation as soon as he grabbed me and calling the police." R.R. at 69a. Implicit in these statements is Collins' acknowledgement that he **could** have "eliminated [him]self from the situation altogether" **without** "shov[ing]" Freeman. R.R. at 66a.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia               :
                                             :
                v.                 :
                                             :

City of Philadelphia Civil     :
Service Commission and      :
Jason Collins                :
                                         :    No. 1972 C.D. 2016
Appeal of: Jason Collins     :

## O R D E R

AND NOW, this 21st day of November, 2017, the Philadelphia County Common Pleas Court's June 22, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge